766 So.2d 271 (2000)
QSR, INC., Appellant,
v.
CONCORD FOOD FESTIVAL INC., a New Hampshire corporation and Joseph Williams, Trustee of the Murray Family Trust, a New Hampshire private trust, Appellees.
No. 4D99-0284.
District Court of Appeal of Florida, Fourth District.
February 16, 2000.
*273 Ann M. Burke and Linda A. Conahan of English, McCaughan & O'Bryan, P.A., Fort Lauderdale, for appellant.
June G. Hoffman, Steven E. Stark and Patti A. Meeks of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for Appellee-Concord Food Festival, Inc.
STEVENSON, J.
This is an appeal from a final order of the trial court dismissing for lack of personal jurisdiction a complaint for breach of a commercial sublease agreement. Because the opposing affidavits concerning the nature of the defendant's contacts with Florida were in conflict, we reverse and remand for an evidentiary hearing.

The facts
Concord Food Festival, Inc. ("Concord") entered into a twenty-year franchise agreement with Miami Subs USA, a Florida corporation, to operate a Miami Subs restaurant. QSR, Inc. ("QSR"), also a Florida corporation, is in the business of leasing or renting premises for Miami Subs franchisees. After completing its franchise deal with Miami Subs USA, Concord subleased property located in Windsor Locks, Connecticut from QSR to operate its Miami Subs restaurant. Both Miami Subs USA and QSR are wholly-owned subsidiaries of a parent company, Miami Subs Corporation.
Subsequently, QSR filed suit against Concord in a Broward County circuit court, alleging that Concord had breached the sublease and abandoned the Connecticut premises.[1] Although the franchise agreement between Concord and Miami Subs USA contained choice of law and venue provisions for suit in Florida, the sublease agreement between QSR and Concord did not. QSR's complaint was dismissed for lack of personal jurisdiction. Now, QSR appeals that dismissal, contending that the trial court erred in dismissing its complaint without first holding an evidentiary hearing and in failing to consider Concord's Florida contacts arising out of its franchise agreement with the non-party but sister corporation of QSR, Miami Subs *274 USA. We find that QSR's position has merit.

Minimum contacts
A two-part inquiry is required to assess whether the exercise of long-arm jurisdiction is appropriate.
"First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient `minimum contacts' are demonstrated to satisfy due process requirements."
Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989)(quoting Unger v. Publisher Entry Serv., Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla.1988)) (citations omitted); see also Woods v. Nova Cos. Belize, Ltd., 739 So.2d 617 (Fla. 4th DCA 1999). The first part of this inquiry is not an issue in this appeal. During the proceedings below, Concord conceded that QSR's complaint, which included a count for breach of contract, alleged sufficient facts to bring it within the scope of subsection (1)(g) of Florida's long-arm statute. See § 48.193(1)(g), Fla. Stat. (1997).
Turning to the second aspect of the jurisdictional inquiry:
If the allegations of the complaint are sufficient to establish Florida's long-arm jurisdiction, the burden shifts to the defendant to contest jurisdiction by a legally sufficient affidavit or other similar sworn proof contesting the essential jurisdictional facts. The burden then returns to the plaintiff who must, by affidavit or other sworn statement, refute the proof in the defendant's affidavit. The failure of a plaintiff to refute the allegations of the defendant's affidavit requires that a motion to dismiss be granted, provided that the defendant's affidavit properly contested the basis for long-arm jurisdiction by legally sufficient facts.
If there is no conflict between the parties' affidavits as to the essential jurisdictional facts, the trial court can resolve the issue of jurisdiction on the basis of the affidavits. If any essential facts relating to jurisdiction are in conflict, then the trial court must conduct a limited evidentiary hearing to resolve the disputed facts.
Washington Capital Corp. v. Milandco, Ltd., Inc., 695 So.2d 838, 841 (Fla. 4th DCA 1997) (citations omitted).
Concord's affidavit alleged: (1) that Concord is a New Hampshire corporation with its primary place of business in New Hampshire; (2) that Concord is in the business of owning and operating Miami Subs franchise restaurants in New Hampshire and Connecticut; (3) that Concord has no offices in Florida and does not operate or conduct business in Florida; (4) that Concord does not solicit business in Florida; (5) that the sublease which forms the basis for the breach of contract action was negotiated and executed in New Hampshire; and (6) that, other than entering into the sublease with QSR, Concord has "had no contact whatsoever with the State of Florida concerning the sublease."
QSR's president, Donald Perlyn, filed a counter affidavit, asserting: (1) that QSR and Miami Subs USA are wholly owned subsidiaries of Miami Subs Corporation; (2) that he is president of QSR, president of Miami Subs USA, and president of Miami Subs Corporation; (3) that, in 1991, David Murray (apparently a representative of Concord) and Miami Subs USA began negotiating the sale of a Miami Subs franchise to Concord; (4) that, in connection with these negotiations, Murray traveled to Florida; (5) that, while David Murray was in Florida negotiating the franchise agreement, he and Perlyn "negotiated the leasing arrangements between QSR and Concord"; (6) that David Murray had "repeated contacts" with the State of Florida regarding Concord's purchase of a Miami Subs franchise; (7) that QSR executed the sublease in Broward County, Florida; (8) that Concord made payments pursuant to the sublease in *275 Florida; and (9) that "Concord had substantial and ongoing contact with QSR in the State of Florida in connection with the Sublease, including contacting QSR in Florida with respect to any and all questions that it had regarding the Sublease." The trial court found that the affidavits were not in conflict and that there were not sufficient minimum contacts to satisfy due process.
Simply contracting with a nonresident is not enough to subject that nonresident to personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). And, it is also not enough to satisfy due process concerns that payment is to be made in the forum state. See Quality Christmas Trees Co. v. Florico Foliage, Inc., 689 So.2d 1222, 1224 (Fla. 5th DCA 1997). Rather, in assessing the sufficiency of the contacts, the courts have looked to the degree of control and interaction that the contract either contemplates or results in. Perhaps the best example of this is the Supreme Court's analysis in Burger King.
Rudzewicz was a Michigan resident who allegedly breached a franchise agreement that he had entered into with Burger King, a Florida corporation. See 471 U.S. at 464, 105 S.Ct. 2174. Burger King filed suit in Florida, relying upon section 48.193(1)(g) of Florida's long-arm statute, and Rudzewicz sought to dismiss for lack of jurisdiction. The contacts between Burger King Corp. and Rudzewicz can be summarized as follows: (1) the franchise application was sent to Miami; (2) Rudzewicz's partner attended the required management course in Miami; (3) restaurant equipment was purchased from a Miami division of Burger King; (4) as the result of disputes prior to the signing of the final agreements, Rudzewicz and his partner negotiated with Miami headquarters; (5) following default, officials in Miami engaged in prolonged negotiations with Rudzewicz via mail and telephone; and (6) the franchise agreement provided that it was to be governed by Florida law.
The Supreme Court found that these contacts were sufficient to satisfy due process concerns and gave rise to personal jurisdiction over Rudzewicz in the Florida courts.
In this case, no physical ties to Florida can be attributed to Rudzewicz other than [his partner's] brief training course in Miami. Rudzewicz did not maintain offices in Florida and, for all that appears from the record, has never even visited there. Yet this franchise dispute grew directly out of "a contract which had a substantial connection with that State." Eschewing the option of operating an independent local enterprise, Rudzewicz deliberately "reach[ed] out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of Rudzewicz' voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated."
Id. at 479-80, 105 S.Ct. 2174 (citations and footnote omitted)(emphasis in original); see also Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389 (11th Cir.1988); Ben M. Hogan Co. v. QDA Inv. Corp., 570 So.2d 1349 (Fla. 3d DCA 1990).
Returning to the instant case, the affidavit of QSR's president maintains that the "leasing arrangements" were made in Florida and that Concord had "substantial and ongoing" contact with QSR, including contacting QSR in Florida. Concord's affidavit, on the other hand, asserts that the sublease was negotiated and executed in New Hampshire and that, "other than entering *276 into the sublease," Concord "had no contact whatsoever" with Florida concerning the sublease. Hence, the affidavits are in conflict. And, given that the degree of control and interaction between the plaintiff and the nonresident defendant is significant in the minimum contacts analysis, an evidentiary hearing was necessary to resolve these conflicts and to explore the nature and extent of the sublease negotiations and the "subsequent ongoing" contacts.

Concord's Contacts with Miami Subs USA
Since remand for an evidentiary hearing is required, we also address QSR's contention that the trial court improperly refused to consider Concord's contacts with Miami Subs USA in the execution of the franchise agreement and Concord's counter-contention that the trial court's decision was correct as Miami Subs USA is not a party to the contract that forms the basis for the cause of action. If general jurisdiction over Concord had been alleged, certainly all of its contacts with the State would be relevant in assessing whether suit could be brought against Concord here.
Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." ... General jurisdiction, as distinguished from specific jurisdiction, does not require that the plaintiffs cause of action arise out of the nonresident defendant's contacts with the forum state. However for general jurisdiction to exist, the defendant must be found to have maintained "continuous and systematic general business contacts" with the forum....
American Overseas Marine Corp. v. Patterson, 632 So.2d 1124, 1127 (Fla. 1st DCA)(quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)), review denied, 641 So.2d 1346 (Fla. 1994).
Although QSR now contends that Concord has sufficient "substantial and systematic business" contacts with the State of Florida to subject Concord to general jurisdiction, QSR did not include any such allegation in its complaint or make this argument during the proceedings below. Instead, QSR sought to bring its claim within the scope of section 48.193(1)(g), breach of contract in the State of Florida. Thus, we must consider whether QSR can rely on Concord's contacts with Miami Subs USA to support the exercise of specific jurisdiction. As indicated, where a forum seeks to exercise specific jurisdiction, the suit must "arise out of" or be "related to" the defendant's contact with the forum. QSR takes the position that Concord's dealings with Miami Subs USA and the execution of the franchise agreement are related to its suit against Concord for breach of the sublease. Our research has revealed no authority discussing the extent to which the defendant's forum contacts must be related to or intertwined with the cause of action to be considered in assessing minimum contacts sufficient to support the exercise of specific jurisdiction. At lease one federal court has noted that this is an issue which the Supreme Court has expressly not decided. See Southwire Co. v. Trans-World Metals & Co., 735 F.2d 440, 442 n. 1 (11th Cir.1984)("In Helicopteros ..., the Supreme Court expressly reserved the questions whether the terms `arising out of' and `related to'... describe different connections between a cause of action and the activity in the forum, what sort of tie with the forum is necessary for either relationship to exist, and whether if the two types differ a cause of action that relates to but does not arise out of defendant's contacts should be analyzed as an assertion of specific as opposed to general jurisdiction.").
*277 Under the circumstances of this case, we believe that it is appropriate to consider Concord's dealings with Miami Subs USA and the franchise agreement because these contacts and this business relationship are so intertwined with Concord's dealings with QSR. QSR's affidavit reflects that Perlyn is president of QSR, with whom Concord contracted regarding the sublease, president of Miami Subs USA, from whom Concord obtained franchise rights, and president of Miami Subs Corp., the parent company of both QSR and Miami Subs USA. Moreover, the franchise agreement in the instant case expressly addressed the possibility that Concord would lease or sublease the real property that would serve as the site for its franchise from Miami Subs and required that Miami Subs USA approve the site. The execution of the franchise agreement and the sublease are part and parcel of a global business deal which gave rise to Concord's contacts with Florida. In fact, the sublease was executed only one month after the execution of the franchise agreement. In reaching this conclusion, we do not hold that Concord's contacts with Miami Subs USA are to be considered simply because QSR and Miami Subs USA are subsidiaries of the same parent company; rather, our decision is premised upon the close connection between Concord's contacts with Miami Subs USA and Concord's contacts with QSR.
REVERSED and REMANDED for further proceedings.
STONE and POLEN, JJ., concur.
NOTES
[1] Joseph Williams, Trustee of the Murray Family Trust, was named as a defendant since the Trust allegedly guaranteed Concord's obligation. Count II of QSR's complaint sought damages against the Trust, as guarantor. And, although the trial court had given QSR additional time to effect service of process on the Trust following rendition of the order dismissing Concord from the suit with prejudice, the trial court entered an order directing the clerk to close the case. As Concord concedes, this was error.