MATRIX Z, LLC, a Florida limited liability company, Plaintiff,

v.

LANDPLAN DESIGN, INC., a South Carolina corporation, Defendant.

No. 07–60641–CIV.

United States District Court, S.D. Florida.

June 27, 2007.

Romin N. Currier, Esquire, Law Offices of William H. Pincus, West Palm Beach, FL, Counsel for Defendant.

Jeffery Hirsch, Esquire, Greenberg Traurig, Ft. Lauderdale, FL, Counsel for Plaintiff.

### FINAL ORDER OF DISMISSAL

COHN, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion to Remand [DE 3], Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue and Forum Non Conveniens [DE 6] and Defendant's Motion to Set Aside Default [DE 7]. The Court has carefully considered the motion, responses, and replies thereto, and is otherwise fully advised in the premises. These motions became ripe on June 13, 2007.

### I. BACKGROUND

Plaintiff Matrix Z, LLC ("Matrix") filed this action for breach of contract against Defendant Landplan, Inc. ("Landplan") in Broward County Circuit Court on March 15, 2007. The papers were served on Defendant on April 5, 2007. On May 4, 2007, Landplan removed the action to federal court, asserting diversity jurisdiction. On May 16, 2007, Landplan filed an Amended Notice of Removal [DE 4, Exhibit 1].

Matrix entered into a contract with Landplan to provide bricks for a public works project in Beaufort, South Carolina. Matrix is a Florida company with its principal place of business in Fort Lauderdale, Florida, while Landplan, Inc., doing business as PaverScape Design Group, is a South Carolina corporation with its principal place of business in South Carolina. The form of the parties' contract consisted of an invoice sent by facsimile from Matrix in Florida to Landplan in South Carolina. Prior to the date of contracting, Landplan and Matrix exchanged telephone calls, facsimiles and e-mails between Florida and South Carolina over an 8–9 month period. Affidavit of Barbara Zigann, ¶ 4 [DE 13-2]. No personal meetings between the parties took place until after a dispute arose regarding performance of the contract.

The public works project at issue was for the City of Beaufort, South Carolina. The City hired Brantley Construction as the General Contractor for the project. Declaration of David Lugo, ¶ 7 [DE 6-2]; Zigann Affidavit, ¶ 5. Either the City or Brantley hired Landplan. Matrix knew that the pavers it was selling to Landplan were for a City project. Zigann Affidavit, ¶ 5.

On March 1, 2006, pursuant to the parties' negotiations, Matrix sent an invoice by facsimile to Landplan for $195,310.40. The same day, Landplan signed the invoice and faxed it back to Matrix. The critical factual dispute in this case that impacts the legal conclusions is whether the Terms and Conditions on the back of Matrix's form invoice were included in the Contract. The Terms and Conditions page contains a forum selection clause of Broward County, Florida. As the exchange of offer and acceptance that formed the contract in this case were both done by facsimile, if the Terms and Conditions page was normally

on the back side of an invoice, it would have had to be separately sent to Landplan to be part of the contract.

Matrix's President, Barbara Zigann, states in her affidavit that a five page facsimile was sent by Matrix consisting of a cover letter, a three page invoice, and the Terms and Conditions page. Zigann Affidavit, ¶ 6; Exhibit A to Zigann Affidavit. The fax log receipt indicates that a five page fax was sent at 10:47 a.m. on March 1, 2006 to the 843 area code (South Carolina). Zigann further states that the invoice was signed and returned the same day. Exhibit B to Zigann Affidavit.

Landplan's President, David Lugo, states that Landplan never received, accepted, or discussed the Terms and Conditions on the separate page. Rather, Lugo states that the five page facsimile Landplan received consisted of the cover sheet, a page of Matrix's contact names and telephone numbers, and the three page invoice. Landplan strongly asserts that Matrix has fabricated its Exhibit A containing the Terms and Conditions. It points to the fax header at the top of Exhibit B to the Zigann Affidavit, in which the page numbers in the fax header for the invoice are pages 3, 4, and 5 of the original fax sent by Matrix. The fax header contains the date (March 1, 2006), time (10:48 a.m.), the initials "BZ" (presumably Barbara Zigann), Matrix's phone number (954–525–1322), and page numbers, 3, 4, and 5. Exhibit B to Zigann Affidavit. This information matches the date and time of the original fax (10:47 a.m. for a duration of 1 minute and 22 seconds). Exhibit A to Zigann Affidavit, sixth page.

A dispute between the parties arose after delivery of the paver bricks to South Carolina. Landplan rejected the goods as non-conforming and refused to pay. Matrix filed this action to recover damages for breach of contract in the form of non-payment.

## II. DISCUSSION

### A. Motion to Remand

■ Matrix moves to remand this case to state court, asserting that Landplan failed to meet its burden regarding diversity of citizenship. On a motion to remand, the removing party bears the burden of establishing jurisdiction. *Tapscott v. M.S. Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir.1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir.2000); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

■ In its initial Notice of Removal, Landplan alleges in conclusory fashion that diversity is present because the parties are citizens of different states. When a federal court's jurisdiction is premised upon the diversity of citizenship between the parties, the plaintiff, or in this case, the removing party, bears the obligation of demonstrating in the complaint that complete diversity exists between the parties. *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). It is well settled that an allegation of residence is not sufficient to establish citizenship. *Fitzgerald v. Seaboard System Railroad, Inc.*, 760 F.2d 1249 (11th Cir.1985); *Delome v. Union Barge Line Co.*, 444 F.2d 225, 233 (5th Cir.), *cert denied*, 404 U.S. 995, 92 S.Ct. 534, 30 L.Ed.2d 547 (1971).[1] In the Notice of

---

1. The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Removal, the allegation of diverse citizenship was made. The Amended Notice of Removal gives the specific information as to which states are involved for each corporate party.

The initial Notice of Removal in this case referred to the invoices attached to Matrix's complaint that identify the parties' place of businesses as being in Florida and South Carolina. Matrix argues that the information on the invoices does not necessarily denote "principal" places of business, though in fact, those listed places of business are the respective principal states of each company's business. Landplan also argues that the style of the case identifies each party's location. Finally, attached to its response to the motion to remand, Landplan has filed an Amended Notice of Removal more specifically explaining the diverse nature of the parties.

 Matrix does not dispute that the parties are in fact diverse, but rather argues that the Amended Notice cannot be considered as it was filed more than 30 days after removal, and addresses a "missing" allegation, rather than an "imperfect or defective" allegation. *Denton v. Wal-Mart Stores,* 733 F.Supp. 340, 341 (M.D.Fla.1990) (see cases cited therein). The Court disagrees. The initial notice alleged diversity of citizenship while the Amended Notice explains the imperfect allegation by listing the specific principal places of business. It is clear in this case that the parties are diverse, and removal was proper. The motion to remand is therefore denied.

### B. Personal Jurisdiction

 Landplan moves to dismiss the Complaint for lack of personal jurisdiction, or in the alternative, for improper venue. The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. When jurisdiction is based on diversity, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process be determined by the state long-arm statute. *Cable/Home Communication Corporation v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed.Cir.1998). If there is a basis for the assertion of personal jurisdiction under the state statute, the Court must next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla. 1989). Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir.1996) (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. at 158).

 When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *See Cable/Home Communication,* 902 F.2d at 855. A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *E.g. Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988) (citations omitted). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. However, where the plaintiff's complaint and the defendant's affidavits

conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Robinson*, 74 F.3d at 255 (11th Cir. 1996) (citing *Madara*, 916 F.2d at 1514).

### 1. Florida Long–Arm Statute

Defendant argues that dismissal is proper because this Court does not have specific or general jurisdiction over Defendants. Plaintiff asserts specific jurisdiction pursuant to Fla. Stat. § 48.193(1)(g) governing a breach of contract occurring within the State of Florida. Plaintiff does not allege general jurisdiction.

Plaintiff asserts that Landplan entered into negotiations with Plaintiff by placing numerous telephone calls and transmitting facsimiles and e-mails to Plaintiff's office in Broward County. Plaintiff asserts that the contract itself contains a forum selection clause of Broward County and required payment to Matrix in Broward County. Plaintiff argues that even where there is no express promise to pay and no place for payment is specified, Florida law presumes payment is at the creditor's residence. *Madax Intern. Corp. v. Delcher Intercontinental Moving Services*, 342 So.2d 1082, 1084 (Fla.Dist.Ct.App.1977). A partial payment of $45,000 was made to Matrix in Broward County.

Defendant supports its motion with uncontroverted facts that Defendant is a small business that only does work in South Carolina. Declaration of David Lugo, ¶ 5. Defendant also asserts that the partial payment of $45,000 was not made by it, but rather by Brantley, the general contractor. As discussed in the Background section above, the only contract between the parties is the invoice, which contains no terms regarding place of payment, depending upon whether the Terms and Conditions are part of the contract. Thus, Defendant disputes that Landplan had any requirement to do anything in Florida, even to pay Plaintiff.

### 2. Minimum Contacts

■ Whether or not Plaintiff has met its burden regarding the Florida long-arm statute, the Court concludes that Defendants' contacts with Florida cannot meet the requirements of due process. The due process component of personal jurisdiction involves a two-part inquiry. In the first prong, the Court must consider whether Defendants engaged in minimum contacts with the state of Florida. In the second prong, the Court must consider whether the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice." *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir.1993) (citing *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158; *Madara*, 916 F.2d at 1515–16).

■ Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being hailed into court there. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996).

■ Plaintiff's assertions are not enough to satisfy the requirements of the due process component. Though Defendant's contact with Plaintiff is related to this cause of action, Defendant has not purposefully availed itself of conducting activities within Florida. Other than some pre-contract exchanges of information related to this cause of action, there is no evidence that Defendant has any contact with Florida. Plaintiff's sole basis for invoking Florida jurisdiction is the forum

selection clause contained in the disputed Terms and Conditions.

▮ Plaintiff has not cited to any cases supporting the view that a disputed forum selection clause can be considered the sole purposeful availment under the minimum contacts analysis. *Compare Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478–80, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (Michigan resident who contracted with Florida company to operate franchise in Michigan was subject to jurisdiction in Florida where franchise agreement subjected Michigan resident to long-term and exacting regulation of his business from Burger King's Miami headquarters). However, when a valid forum selection clause exists, the burden in a venue dispute pursuant to 28 U.S.C. § 1404(a) shifts to the party seeking to defeat the agreed upon venue. *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989) ("We conclude that when a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute.").

▮ The presumption of enforceability of forum selection clauses may be overcome only by a clear showing that the clause is unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Forum selection clauses are presumptively valid, and the burden of proving their unreasonableness is a heavy one. *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907. A forum selection clause may be unreasonable where: (1) incorporation of the clause was the product of fraud or overreaching; (2) a party will "for all practical purposes be deprived of his day in court" because of inconvenience or unfairness of the selected

forum; (3) the unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state. *Shute,* 499 U.S. at 595, 111 S.Ct. 1522; *Bremen,* 407 U.S. at 12–13, 92 S.Ct. 1907. The Eleventh Circuit recently reiterated these principles in *P & S Business Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804, 807–808 (11th Cir.2003) (Court rejected argument that financial difficulty of party in litigating in selected forum or congestion of docket in selected forum are sufficient grounds for refusal to enforce clause).

Incorporating this burden into the present dispute regarding minimum contacts, the Court must decide whether the Terms and Conditions were part of the contract. This is a case in which plaintiff's complaint and affidavit conflicts with defendant's affidavit. While the Court must construe all reasonable inferences in favor of the plaintiff, *Robinson,* 74 F.3d at 255, in analyzing the dispute over the invoice pages that were faxed between the parties, the Court agrees with Defendant that the facsimile records support Lugo's affidavit that Terms and Conditions were not attached to the invoice. It would not be reasonable for the Terms and Conditions to precede the faxed invoice at page 2 of the five page facsimile sent by Matrix to Landplan.

The Court therefore concludes that it is more likely than not that the forum selection clause was not part of the contract between the parties. Without the forum selection clause, there is no doubt that Landplan has insufficient minimum contacts to be sued in Florida. *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (Fla.1989) ("we do not believe that the mere failure to pay money in Florida, standing alone, would suffice to obtain jurisdiction over a nonresident defendant");

*QSR, Inc. v. Concord Food Festival, Inc.*, 766 So.2d 271, 275 (Fla.Dist.Ct.App.2000).

## III. CONCLUSION

The Court concludes that Plaintiff Matrix has not met its burden that Defendant Landplan has the minimum contacts to be sued in Florida. Defendant has no contacts with Florida outside this dispute. The invoice that forms the basis of the contract, wherein pavers were to be delivered by Plaintiff to South Carolina for use in a public works project in that state, does not create purposeful availment by Defendant of the privilege of conducting activities within Florida. While dismissal of this action is a harsh remedy, as opposed to transfer of this action to South Carolina, the absence of personal jurisdiction warrants the result.[2] Plaintiff can still sue under its contract in South Carolina.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion to Remand [DE 3] is hereby **DENIED**;

2. Defendant's Motion to Set Aside Default [DE 7] is hereby **GRANTED**;

3. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [DE 6] is hereby **GRANTED**;

4. This action is **DISMISSED without prejudice,** for lack of personal jurisdiction;

5. The Clerk may close this case and deny any other pending motions as moot.

---

**2.** The Court also grants Landplan's Motion to Vacate the Clerk's default entered in state court prior to removal of this action. The Default was entered on May 1, 2007, six days after a response to the Complaint was due. Landplan removed the action on May 4, 2007 and moved to dismiss the action on May 18, 2007. Landplan has shown good cause to vacate the default as the state court lacked jurisdiction over it for the reasons explained above.