NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


TEVA PHARMACEUTICAL INDUSTRIES, )
                                       )
                Appellant, )
                                         )
v.                                           )
                                         )
FRANCES RUIZ, as Plenary Guardian of )
Person and Property of Luis Ruiz; )
FRANCES RUIZ, individually; ROSA )
MAGDALENA RUIZ, individually; and )
FRANCES RUIZ, as parent and natural )
guardian of Ana Maria Ruiz, )
                                         )
                Appellees. )
                                         )

Case No. 2D14-4462

Opinion filed October 16, 2015.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Hillsborough
County; Sam D. Pendino, Judge.

Glen S. Kerner, William M. Jay, and Nilda M.
Isidro of Goodwin Procter LLP, New York,
New York; and Edward W. Gerecke, Joseph
H. Lang, Jr., and David J. Walz of Carlton
Fields Jorden Burt, P.A., Tampa, for
Appellant.

George A. Vaka and Nancy A. Lauten of
Vaka Law Group, Tampa; and Karen E.
Terry, Pablo Perhacs, and Matthew
Schwencke of Searcy Denney Scarola
Barnhart & Shipley, P.A., West Palm Beach,
for Appellees.

CASANUEVA, Judge.

Teva Pharmaceutical Industries (hereafter "Teva Industries") appeals an order denying its motion to dismiss the Appellees' complaint for lack of personal jurisdiction. In a sixth amended complaint, the Appellees alleged claims against Teva Industries for negligence and strict liability. Teva Industries argues that it is an Israeli company with no connection to Florida or to this litigation and that, therefore, it is not subject to personal jurisdiction in Florida. We reverse and remand for further proceedings.

To establish long-arm jurisdiction over a party, "a trial court must decide whether (1) there are sufficient jurisdictional facts to bring the action within the purview of [section 48.193, Florida Statutes]; and (2) the nonresident defendant involved has sufficient minimum contacts with Florida to satisfy constitutional due process requirements." Kin Yong Lung Indus. Co. v. Temple, 816 So. 2d 663, 665-66 (Fla. 2d DCA 2002) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 501-02 (Fla. 1989)). The second prong requires the trial court to "consider whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice." Res. Healthcare of Am., Inc. v. McKinney, 940 So. 2d 1139, 1141 (Fla. 2d DCA 2006).

In ruling on a motion to dismiss for lack of jurisdiction, the complaint must first be examined to determine whether it alleges a basis for jurisdiction under section 48.193, Florida Statutes (2009). See Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle, 955 So. 2d 598, 601 (Fla. 2d DCA 2007). The plaintiff may either track the

language of section 48.193 without pleading supporting facts, or the plaintiff may allege "specific facts that demonstrate that the defendant's actions fit within one or more subsections of section 48.193." Id. Section 48.193(1) provides as follows:

> Any person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
>      . . . .
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
> 1. The defendant was engaged in solicitation or service activities within this state; or
>
> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(Emphasis added.)

This conduct is required to establish "specific" jurisdiction. Jurisdiction over a defendant may also be established under the theory of "general jurisdiction" as provided in section 48.193(2), which states that general jurisdiction may be established when "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

- 3 -

Id. We conclude that this case must be reversed for an evidentiary hearing for the trial court to consider whether the conduct of Teva Industries meets the requirements for "specific jurisdiction" and whether Teva Industries had sufficient minimum contacts with Florida to satisfy constitutional due process requirements.

### Specific Jurisdiction

The sixth amended complaint alleged that during outpatient surgery, Luis Ruiz was given the drug propofol which was contaminated with endotoxins, microbial contaminants, or other bacteria. As a result, Mr. Ruiz suffered serious and permanent injury. The complaint alleged that Teva Pharmaceuticals USA, Inc. (hereafter "Teva USA") is a wholly owned subsidiary of Teva Industries; that Teva USA regularly conducts business in Hillsborough County, Florida; and that Teva USA manufactured, distributed, sold, or supplied the drug which caused the injury at issue. The complaint also alleged that Teva Industries is a publicly traded, foreign corporation which is organized, existing, and doing business under and by virtue of the laws of Israel. It alleged that Teva Industries exercised 100% ownership and control over its wholly owned subsidiaries, Teva USA; Sicor, Inc.; and Teva Parenteral Medicines, Inc., and is therefore liable for any and all tort liabilities of its subsidiaries. The complaint further alleged that Teva Industries regularly conducts business in Hillsborough County, Florida, and that it manufactured, distributed, sold, or supplied the drug at issue.

We conclude that the complaint alleged sufficient facts indicating that Teva Industries' actions fit within section 48.193(1)(a) and (f). Although Teva Industries contends that the allegations are not sufficiently specific, we note that the allegation that

Teva Industries "regularly conducts business in Hillsborough County, Florida" sufficiently tracks the language of section 48.193(1)(a).

Once the Appellees met this pleading requirement, the burden then shifted to Teva Industries "to file a legally sufficient affidavit or other sworn proof that contests the essential jurisdictional facts of [Ruiz's] complaint." Hilltopper Holding Corp., 955 So. 2d at 601 (citing Venetian Salami Co., 554 So. 2d at 502; Kin Yong Lung Indus. Co., 816 So. 2d at 666). Teva Industries submitted the affidavit of Kobi Altman, a vice president of finance, to rebut the allegation that it was subject to Florida's jurisdiction because it conducts no business in Florida and has no connection to either Florida or this litigation.

Mr. Altman testified in his affidavit that Teva Industries conducts no business of any kind in Florida. Teva Industries is not incorporated in Florida and it has never sought to file articles of incorporation in this state. It maintains no branch offices in the state and does not own land or any other property in the state. It has no Florida address, post office box, or telephone number, and it maintains no Florida bank accounts. Its board members do not meet, and have never met, in Florida. Teva Industries is not licensed to do business in Florida, nor does it solicit any business in Florida or perform any services in Florida. Teva Industries does not pay taxes in Florida, nor does it hold a Florida manufacturer's permit. Teva Industries has not designated a Florida resident as an agent for service of process, nor has it engaged in any advertising activity targeted at the Florida market.

Mr. Altman explained in his affidavit that Teva Industries and its affiliates each observe separate corporate forms and that each company holds its own board

meetings and maintains its books and records separate from those of the other two companies. Further, the companies have separate corporate headquarters. Although one entity may from time to time pay the expenses owed by related entities to third parties, those expenses are ultimately allocated to the entity that incurred them.

When Teva Industries ships goods that it manufactures to Teva USA so that the goods can be sold in the United States through other distributors, Teva USA pays Teva Industries for those shipments. Title to the goods passes to Teva USA outside the United States.

Mr. Altman testified that Teva Parenteral Medicines, Inc. ("Teva Parenteral"), is a Delaware corporation with its principal place of business in Irvine, California. Teva Parenteral manufactured propofol during the time period relevant to the allegations in the complaint. Teva Industries does not dominate or control the day-to-day operations of either Teva USA or Teva Parenteral.

Mr. Altman testified that Teva Industries has never manufactured, marketed, or sold propofol in the United States. Teva Industries did not have any physical contact with, possession of, or legal title to the propofol manufactured by Teva Parenteral. It had no role in testing the propofol sold in the United States or in overseeing quality assurance programs with respect to propofol. Further, Teva Industries had no involvement in the formulation of any policies or procedures related to quality assurance activities with respect to propofol and played no role in ensuring that the propofol manufactured by Teva Parenteral was subjected to any prescribed process or procedure.

We conclude that Mr. Altman's affidavit was sufficient to refute the jurisdictional allegations in the complaint.  In Hilltopper, 955 So. 2d at 602, this court held that the affidavits of the corporate representative were sufficient to refute the jurisdictional allegations in the complaint where the affidavits alleged that

> neither Hilltopper nor Centennial conducted business in Florida, neither corporation had agents appointed for service of process in Florida, neither corporation was licensed to do business in Florida, neither corporation maintained offices or employees in Florida, and neither corporation advertised in Florida.  Further, each affidavit alleged that neither Hilltopper nor Centennial owned, managed, or operated the nursing home at issue, had any management responsibilities at the nursing home at issue, or had employees through which it provided patient care at the nursing home at issue.

Id. at 600.

Here, Mr. Altman's affidavit is far more comprehensive than the affidavit in Hilltopper, and it was sufficient to refute the jurisdictional allegations in the Appellees' complaint.  The affidavit, which must be taken as true, indicates that Teva Industries' conduct does not subject it to jurisdiction in this state.  See id. at 601.

Because Mr. Altman's affidavit fully disputes the jurisdictional allegations in the complaint, the burden shifts back to the Appellees to prove by affidavit or other sworn proof that a basis for long-arm jurisdiction exists.  "If the plaintiff fails to come forward with sworn proof to refute the allegations in the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted."  Id. at 602 (citing Venetian Salami Co., 554 So. 2d at 502; Kin Yong Lung Indus. Co., 816 So. 2d at 666; Capital One Fin. Corp. v. Miller, 709 So. 2d 639, 640 (Fla. 2d DCA 1998); Lampe v. Hoyne, 652 So. 2d 424, 425 (Fla. 2d DCA 1995)).  However, if the plaintiff does come forward with such proof and there is a conflict in the parties' evidence, "the trial court

- 7 -

should hold a limited evidentiary hearing to resolve the disputed issues of fact and to determine the jurisdiction issue."  McKinney, 940 So. 2d at 1140-41 (citing Venetian Salami Co., 554 So. 2d at 503).

The Appellees submitted several documents in opposition to the motion to dismiss.  The first document is a diagram of Teva Parenteral's manufacturing facility in Irvine, California.  At the top left corner of the document, it states, "This document and its contents are the property of Teva Pharmaceutical Industries LTD.  The information contained herein may not be used or copied in any manner without the written permission of Teva Pharmaceutical Industries LTD."  At the bottom of the document on the right, the address is listed along with the name "Teva Parenteral Medicines."  The Appellees noted that Teva Industries has 100% ownership of Teva USA and that Teva USA is the sole shareholder of the 1000 shares of stock of Teva Parenteral Medicines.

The Appellees also submitted documents from the Securities and Exchange Commission noting that Teva Industries may own four properties in Miami, Florida.  They further submitted excerpts from the deposition of Brian Shanahan, which suggested that Mr. Shanahan may have been the attorney for Teva USA, Teva Industries, and Sicor.  Mr. Shanahan also testified that from 2009 through 2012, he was the assistant secretary of three companies: Teva USA, Teva Parenteral, and Sicor.

Another deposition submitted by the Appellees was the deposition of Fran Sakers Zipp.  Beginning on July 1, 2009, as the head of global quality, she handled global quality issues for all of Teva Industries both in the United States and other countries: "any location where Teva was doing business relative to quality activities."

However, she claimed that she did not know for which entity she was exercising global or strategic oversight in July of 2009:

> I don't know specifically. I was an employee of Teva USA. I was in a global role looking at strategic activities across all Teva facilities related to quality matters, so I cannot say specifically other than my role was as a global function for Teva and employed by Teva USA.

Although Ms. Zipp claimed that she was not employed by Teva Industries, the Appellees submitted evidence that contradicted these claims.

Ms. Zipp participated in the recall of propofol and discussed the situation involving propofol with several other individuals who were a part of her global quality team, including one employee who was based in Florida. Ms. Zipp also discussed propofol with other members of Teva Industries, including the CEO of Teva Industries, at a Teva Industries office in Israel. She further testified that she reported the issues involving propofol to her "management" at Teva Industries.

We conclude that the evidence submitted by the Appellees refuted the allegations in Mr. Altman's affidavit and that because there was a conflict in the evidence, the trial court was required to hold a limited evidentiary hearing to resolve the disputed issues of fact. In this case, there is no dispute that Teva Industries owned 100% of the stock of both Teva USA and Teva Parenteral and that the corporations have separate headquarters. Further, Mr. Altman explained in his affidavit that Teva Industries and its affiliates each observe separate corporate forms and that each company holds its own board meetings and maintains its books and records separate from those of the other two companies. Although one entity may from time to time pay

the expenses owed by related entities to third parties, those expenses are ultimately allocated to the entity that incurred them.

On the other hand, Mr. Altman testified that Teva Industries does not dominate or control the day-to-day operations of either Teva USA or Teva Parenteral, that it had no role in overseeing quality assurance programs with respect to propofol, that it had no involvement in the formulation of any policies or procedures related to quality assurance activities with respect to propofol, and that it played no role in ensuring that the propofol manufactured by Teva Parenteral was subjected to any prescribed process or procedure. Mr. Ruiz presented evidence that contradicted these assertions.

There was evidence that Ms. Zipp was the executive vice president and global head of quality for Teva Industries. She testified that she handled global quality issues for all of Teva Industries both in the United States and other countries: "I was in a global role looking at strategic activities across all Teva facilities related to quality matters . . . ." This would suggest that Teva Industries had a hand in the day-to-day operation and policy decisions of its subsidiaries.

Ms. Zipp testified that in 2009, she discussed propofol with members of Teva Industries, including Eran Katz and Schlomo Yanai, who at the time was the CEO of Teva Industries. The meeting was held at a Teva Industries office in Israel. Later in the deposition, Ms. Zipp discussed an email she forwarded to Mr. Katz, testifying that she "reported to Mr. Katz, so I was alerting my management of this email." Ms. Zipp was required to review and edit the field alert form sent to the FDA, and such form was

mailed only after she had approved it. Her email to Mr. Katz notes that she made changes to the propofol field alert that went to the FDA.

There was also evidence that, as an employee of Teva Industries, Ms. Zipp was involved in corrective and preventative actions related to propofol, the October 2009 recall of propofol, quality improvement, and enhanced facility compliance with regulations. Therefore, there was evidence to support the finding that Teva Industries did exercise authority over general policy and daily operations, including the propofol recall, quality improvement, and enhanced facility compliance.

Because the Appellees submitted depositions and documents that were contrary to the allegations in Mr. Altman's affidavit, the trial court was required to hold a limited evidentiary hearing. See Venetian Salami Co., 554 So. 2d at 503. "[A]n evidentiary hearing under Venetian Salami resolves the factual disputes necessary to determine jurisdiction pursuant to section 48.193 as well as whether minimum contacts exist to satisfy due process concerns." Dev. Corp. of Palm Beach v. WBC Constr., L.L.C., 925 So. 2d 1156, 1160 (Fla. 4th DCA 2006). Although the trial court conducted a hearing on the motion to dismiss, it did not receive any testimony or evidence at the hearing. The order denying the motion to dismiss contains no reasoning and does not explain how the trial court resolved the disputed issues of fact.

### General Jurisdiction

As previously noted, jurisdiction over a defendant may also be established under the theory of "general jurisdiction" as provided in section 48.193(2). However, we conclude that the Appellees cannot establish the requirements for general jurisdiction as recently delineated by the Supreme Court in Daimler AG v. Bauman, 134 S. Ct. 746

- 11 -

(2014). In <u>Daimler</u>, the Court held that the test to determine if general jurisdiction exists is whether the foreign corporation's " 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.' " <u>Id.</u> at 761 (alteration in original) (quoting <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846, 2851 (2011)). Noting that neither Daimler nor MBUSA was incorporated in California or had its principal place of business there, the Court held that the companies were not "at home in California, and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California." <u>Id.</u> at 761-62.

In the present case, neither Teva USA nor Teva Industries is incorporated in Florida or has its principal place of business here. Therefore, pursuant to <u>Daimler</u>, Florida does not have general jurisdiction over either company.

**Due Process**

Even if the Appellees can establish that the conduct of Teva Industries meets the requirements for specific jurisdiction, they must also establish that Teva Industries has sufficient minimum contacts with Florida to satisfy constitutional due process requirements. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." <u>Walden v. Fiore</u>, 134 S. Ct. 1115, 1121 (2014) (citing <u>World–Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980)). A defendant's suit-related actions must create a substantial connection with the state before that state can exercise jurisdiction consistent with due process. <u>Id.</u> "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." <u>Id.</u> at 1122 (quoting <u>Burger King</u>

<u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).  Second, the "minimum contacts" analysis examines the defendant's contacts with the state itself, not merely the defendant's contacts with persons who reside in that state.  <u>Id.</u>  Again, there was contradictory evidence on this issue.  On remand, the trial court should conduct an evidentiary hearing to determine whether Teva Industries had sufficient minimum contacts with Florida to satisfy the due process requirements.

Reversed and remanded for proceedings consistent with this opinion.


MORRIS and SLEET, JJ., Concur.