# Third District Court of Appeal

**State of Florida**

Opinion filed November 21, 2018.

_____

No. 3D18-792
Lower Tribunal No. 17-13703
_____

**Highland Stucco and Lime Products, Inc.,**
Appellant,

vs.

**Silverio Onorato and Faye Onorato,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

GrayRobinson, P.A., and Jack R. Reiter, for appellant.

Rebecca S. Vinocur; Simmons Hanly Conroy and William Kohlburn (Salt Lake City, UT), for appellees.

Before ROTHENBERG, C.J., and SALTER and LOGUE, JJ.

<u>ON MOTION FOR CLARIFICATION</u>

ROTHENBERG, C.J.

On the appellee's motion for clarification, we grant the motion, withdraw this court's opinion issued on September 20, 2018, and issue the following opinion in its stead.

The defendant below, Highland Stucco and Lime Products, Inc. ("Highland"), appeals from an order denying its motion to dismiss for lack of personal jurisdiction. Because the plaintiffs, Silverio Onorato ("Onorato") and Faye Onorato (collectively, "the plaintiffs") failed to satisfy the "minimum contacts" federal constitutional due process requirement, see Reynolds Am., Inc. v. Gero, 56 So. 3d 117, 119 (Fla. 3d DCA 2011) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)), we reverse.

## BACKGROUND

The plaintiffs filed a products liability action against Highland and several other defendants alleging that Onorato developed mesothelioma from his exposure from 1972 to 1976 to asbestos-containing products that were manufactured, distributed, and/or sold by the defendants in the state of Florida.

Highland filed a motion to dismiss for lack of personal jurisdiction, and in support of its motion, Highland submitted the sworn affidavit of Frederick M. Atkinson ("Atkinson"). In his affidavit, Atkinson explained that Highland, which dissolved in 2009, was acquired in the mid-1960s by his father, who is now deceased, and Atkinson began working at Highland in 1966, moving up through

2

the ranks of the company until he became the vice-president in 1972, and the president approximately twenty years later. The affidavit provides that, among other things, Highland is not and has never been a resident of the state of Florida, and at all times has been a resident of the state of California with its principal place of business in California; had no owners, agents, or employees in Florida; never owned or operated a facility outside of Southern California; never transacted any business in Florida; never negotiated, entered into, or performed a contract in Florida; never owned, used, or possessed real or personal property in Florida; never maintained a place of business in Florida; was never registered to conduct business in Florida; never maintained any bank accounts, offices, post office boxes, telephone numbers, or any other business facility in Florida; never advertised in any Florida publication or on any Florida radio or television station; did not directly solicit business in Florida; never manufactured, distributed, sold, supplied, or installed any asbestos-containing products in Florida; and had no connection with Florida arising from any action or conduct Highland purposely directed towards Florida. The affidavit further states that "[t]he overwhelming majority of HIGHLAND's business was conducted in California. During the time period when HIGHLAND used asbestos, its products were primarily sold to building supply dealers within a 60 mile radius of its Van Nuys, California plant."

In response to Highland's motion, the plaintiffs submitted the following: (1)

3

excerpts from Onorato's deposition wherein he testified that Highland's products were commercially available for purchase in Florida during the time of his exposure; (2) a 1959 trade journal advertisement for Highland's "Hi-Sorb" acoustical plaster that was distributed by Highland Stucco and Lime Products of Florida, Inc. ("Highland of Florida"); (3) an article from the same trade journal that references a plant in Fort Lauderdale operated by Highland of Florida; and (4) an excerpt from Atkinson's deposition which was taken in connection with a 2000 California lawsuit. Highland replied with documentation demonstrating that **Highland of Florida was dissolved in 1964, approximately eight years prior to Onorato's alleged exposure**.

The trial court conducted a non-evidentiary hearing on the motion. At the conclusion of the hearing, the trial court denied Highland's motion to dismiss. In its order, the trial court concluded that the plaintiffs had alleged sufficient jurisdictional facts to support the trial court's exercise of specific jurisdiction over Highland pursuant to section 48.193(1)(a), Florida Statutes, and to satisfy the constitutional due process requirements because Onorato "testified to his use of and exposure to Highland Stucco products within the state of Florida," and that "[the] product was purchased through distributors in Florida." This appeal followed.

4

## STANDARD OF REVIEW

This Court reviews a trial court's ruling on a motion to dismiss for lack of personal jurisdiction *de novo*. Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002). Where the trial court's decision is based on live testimony, the appellate court defers to the trial court's determination as to the credibility of witnesses. Evans v. Thornton, 898 So. 2d 151, 152 (Fla. 4th DCA 2005) (citing McCarter v. Bigfoot Indus. Inc., 805 So. 2d 1028, 1031 (Fla. 4th DCA 2001)). Because the trial court made its determination based only on written submissions, we stand on equal footing with the trial court as to the interpretation of the written submissions. Crawford v. Baker, 64 So. 3d 1246, 1251 (Fla. 2011) (citing Muir v. Muir, 925 So. 2d 356, 358 (Fla. 5th DCA 2006)).

## ANALYSIS

### I.    Personal Jurisdiction

In Venetian Salami Co. v. Parthenais, 554 So. 2d 499 (Fla. 1989), the Florida Supreme Court set forth a two-step process for determining whether personal jurisdiction exists. First, a trial court must determine whether: (1) there exist sufficient jurisdictional facts to bring the action within the purview of Florida's long-arm statute, section 48.193, Florida Statutes;[1] and (2) whether the

---

[1]During the time of Onorato's alleged exposure, the statute was numbered as section 48.182, Florida Statutes.

5

foreign corporation possesses sufficient minimum contacts with Florida to satisfy federal constitutional due process requirements. Venetian Salami, 554 So. 2d at 501-02. The first, or statutory prong, is established by demonstrating either general or specific jurisdiction. Teva Pharm. Indus. v. Ruiz, 181 So. 3d 513, 517 (Fla. 2d DCA 2015). General jurisdiction is established where the defendant has engaged in substantial and not isolated activity within the state. Id. In other words, the defendant's affiliations with the state are so continuous and systemic as to render it essentially "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 128 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, is established by pleading specific facts that demonstrate that the defendant's conduct fits within one or more subsections of section 48.193.

A.  **Specific Jurisdiction Under Florida's Long-Arm Statute**

In this case, the plaintiffs are relying on specific jurisdiction in order to satisfy personal jurisdiction under Florida's long-arm jurisdiction. Section 48.193(1)(a) provides, in part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this

6

state.

2. Committing a tortious act within this state.

3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

4. Contracting to insure a person, property, or risk located within this state at the time of contracting.

. . . .

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

   a. The defendant was engaged in solicitation or service activities within this state; or

   b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

. . . .

In the first amended complaint ("complaint"), the plaintiffs alleged that Onorato developed mesothelioma as a result of being exposed in Florida to products containing asbestos manufactured by Highland. Because the complaint alleges that Highland committed a tortious act in Florida, thus satisfying specific jurisdiction under section 48.193(1)(a)(2), the burden shifted to Highland to contest the allegations by affidavit or other proof, or to claim that the federal

minimum contacts requirement was not satisfied. S. Wall Prods. Inc. v. Bolin, 251 So. 3d 935, 938-39  (Fla. 4th DCA 2018) (citing Venetian Salami, 554 So. 2d at 502).

As noted above, Highland submitted the Atkinson affidavit in support of its motion to dismiss.  In his affidavit, Atkinson averred that Highland never transacted any business in Florida; never negotiated, entered into, or performed a contract in Florida; never owned, used, or possessed real property in Florida; never contracted to insure any person, property, or risk in Florida; never maintained a place of business in Florida; never registered to do business in Florida; never had a registered agent in Florida; never obtained bank accounts, offices, post office boxes, telephone numbers, or any other business facilities in Florida; and never advertised in any Florida publication, radio station, or television station. Atkinson's affidavit also states that Highland did not directly solicit business within Florida; had no connection with Florida arising from any action or conduct; never purposely directed conduct toward Florida; and never manufactured, distributed, sold, supplied or installed any asbestos-containing products in Florida.

Because Highland adequately contested the allegations, the burden then shifted back to the plaintiffs to refute the evidence submitted by Highland. Venetian Salami, 554 So. 2d at 502.    The plaintiffs conducted no jurisdictional discovery and the only evidence they submitted to rebut Atkinson's affidavit was:

8

(1) an unauthenticated advertisement from a 1959 trade journal for Highland Hi-Sorb acoustical plaster distributed by Highland of Florida; (2) an unauthenticated article in the same 1959 trade journal that references a plant in Fort Lauderdale operated by Highland of Florida; and (3) testimony given by Atkinson in a 2000 California case. In the 2000 California case, Atkinson specifically testified that all of Highland's sales were made to building material dealers who would usually pick the products up at the plant. However, on occasion, Highland would deliver the products to the dealers, but this did not occur often because the company had only one truck and primarily sold to dealers within a sixty-mile radius of its plant in Van Nuys, California. Highland contends that nothing in Atkinson's testimony serves to refute the affidavit that Atkinson filed in this case. We agree.

Highland, the named defendant in this action, was a California corporation that dissolved in 2009. Highland of Florida, at best, was a Florida corporation that dissolved in 1964, approximately eight years before Onorato's alleged exposure to stucco products containing asbestos, and Onorato has failed to show any connection or relationship between the two corporations. Nothing in the record suggests that the two corporations shared a corporate identity.

Further, even if the plaintiffs had established that the Florida entity was a subsidiary of Highland, the mere presence of a subsidiary in Florida, without more, is insufficient to subject a non-Florida corporate parent to Florida's long-arm

9

jurisdiction. See Walt Disney Co. v. Nelson, 677 So. 2d 400, 403 (Fla. 5th DCA 1996). More importantly, even if the plaintiffs had satisfied specific jurisdiction under Florida's long-arm jurisdiction, they still failed to establish that Highland, not Highland of Florida, had sufficient minimum contacts with Florida, such that extending jurisdiction does not offend constitutional due process.

**B. Constitutional Due Process**

While the statutory prong of the analysis is applied broadly, the constitutional prong is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement. Exec-Tech Bus. Sys., Inc., v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000). The constitutional prong of the analysis requires the trial court to consider whether the defendant has sufficient minimum contacts with the state so that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. Venetian Salami, 554 So. 2d at 502 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

In this connection, the plaintiff must establish that the defendant's contacts with the forum state are: (1) related to the cause of action or gave rise to it; (2) involve some act by which the defendant purposefully availed itself of the privilege of conducting business within the forum; and (3) the defendant's act is

10

such that it should reasonably anticipate being haled into court in that forum state. See Bolin, 251 So. 3d at 938 (citing Moro Aircraft Leasing, Inc. v. Int'l Aviation Mktg., Inc., 206 So. 3d 814, 817 (Fla. 2d DCA 2016)). "Random, fortuitous, or attenuated contacts" are insufficient. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The "purposefully availed itself of conducting business within the forum" and that the "act is such that it should reasonably anticipate being haled into court in that forum state" prongs of the constitutional due process analysis are especially important in this appeal. In products liability cases like this one, it is the defendant's purposeful availment that renders jurisdiction consistent with "traditional notions of fair play and substantial justice." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880 (2011). It is not enough that Highland's products may have found their way into Florida or that Highland may have predicted that they might reach Florida, as foreseeability that a product may find its way into a forum state is not enough, by itself, to allow that state to constitutionally exercise jurisdiction over an out-of-state defendant. Blumbery v. Steve Weiss & Co., Inc., 922 So. 2d 361, 365 (Fla. 3d DCA 2006); see also Bolin, 251 So. 3d at 939-40 (noting that the United States Supreme Court has concluded that merely placing goods in the stream of commerce does not create sufficient minimum contacts to warrant the assertion of jurisdiction) (citing to the plurality in J. McIntyre Mach.).

11

Specifically, in <u>Bolin</u>, the Fourth District concluded in an asbestos products liability case that Florida lacked personal jurisdiction over the Georgia corporate defendant where there was no evidence that the Georgia defendant marketed its product in the state, employed agents in the state, had any agreements with distributors in the state, or had any contact which would suggest purposeful availment of the privileges of the forum, and had not presented any evidence as to how the defendant's product was distributed to Florida.

Similarly, in the instant case, the plaintiffs never established a link between Highland and the product he used, how it came to be in Florida, nor that Highland's contacts within the state of Florida were "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>J. McIntyre Mach.</u>, 564 U.S. at 880 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). We, therefore, conclude that even if specific jurisdiction under Florida's long-arm jurisdiction was established, the plaintiffs failed to meet their burden of overcoming Highland's sworn affidavit and submitting evidence demonstrating that Highland's contacts with Florida are sufficient under the constitutional due process prong of the jurisdictional analysis.

## CONCLUSION

Highland submitted a very detailed affidavit in support of its motion to dismiss for lack of personal jurisdiction. Because the plaintiffs failed to satisfy

12

their burden by presenting evidence as to how Highland's product(s) may have made their way to Florida and in what quantity, or that Highland directed its product into Florida for distribution, and it was undisputed that Highland was at all times a resident of California, with its principal place of business in California, and has never conducted business in Florida, advertised in a Florida publication, nor manufactured, sold, distributed, or supplied any products containing asbestos in Florida, the plaintiffs failed to demonstrate that Highland purposefully availed itself of the privilege of conducting business within the state such that it reasonably could have anticipated being haled into court in this state. The plaintiffs, therefore, failed to meet their burden of satisfying the constitutional due process prong of the personal jurisdiction analysis. Accordingly, we reverse the trial court's order denying Highland's motion to dismiss for lack of personal jurisdiction.

Reversed.