# Third District Court of Appeal

## State of Florida

Opinion filed March 1, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1759
Lower Tribunal No. 11-29169
_____

**Team Health Holdings, Inc.,**
Appellant,

vs.

**Lizette C. Caceres, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Nelson Mullins Broad and Cassel, and Linda Spaulding White and Peter R. Goldman (Fort Lauderdale), for appellant.

Wasson & Associates, Chartered, and Roy D. Wasson; John B. Ostrow, P.A., and John B. Ostrow, for appellees.

Before FERNANDEZ, C.J., and EMAS and MILLER, JJ.

EMAS, J.

**INTRODUCTION**

Team Health Holdings ("THH")—a Delaware corporation with its principal place of business in Tennessee—appeals the trial court's order denying its motion to dismiss for lack of personal jurisdiction. Because the plaintiffs failed to satisfy the requirements for general jurisdiction under Florida law, we reverse and remand with directions to enter an order of dismissal as to THH.

**FACTUAL AND PROCEDURAL BACKGROUND**

The instant lawsuit arose out of medical treatment provided to Lizette Caceres at Baptist Hospital in April 2010. Caceres alleges that, during her hospital admission, she suffered a hemorrhagic stroke which resulted in permanent injuries. In 2011, Caceres and her family ("Plaintiffs") filed a medical negligence suit against several physicians and entities, including IPC Healthcare (IPC) and InPatient Consultants of Florida, Inc. (IPC Florida). Seven years later, in 2018, Plaintiffs added Team Health Holdings ("THH") as a defendant under a theory of corporate successor liability.

In 2015, three years before it was added as a defendant to the action, THH acquired IPC Healthcare, Inc. (IPC). The central question presented by this appeal is whether the trial court erred in finding general jurisdiction over THH premised on the determination that THH assumed and exercised

2

operational control over its subsidiary, IPC Healthcare, Inc. We find that it did.

By way of additional background, in 2017 (two years after THH acquired IPC and one year before Caceres added THH to her malpractice lawsuit), THH entered into a Corporate Integrity Agreement with the Inspector General of the U.S. Department of Health and Human Services due to IPC's prior violations of the federal False Claims Act, i.e., billing Medicare and Medicaid for more expensive levels of medical service than were actually provided ("upcoding"). The violations were alleged to have been committed by IPC Healthcare sometime before 2009.

To resolve the matter with the federal government, THH entered into a settlement agreement by which THH agreed to pay $60 million. The Corporate Integrity Agreement, and IPC's prior violations, are wholly unrelated to the facts involved in Plaintiff's medical malpractice lawsuit.

**The Prior Appeal (_Caceres I_)**

In 2019, THH moved to dismiss the lawsuit on several grounds, including lack of personal jurisdiction. Attached to its motion was both an initial and a supplemental affidavit from John Stair, THH's Chief Operations Counsel and Assistant Secretary. The Stair affidavits contested personal jurisdiction based on Stair's personal knowledge as a THH executive and his

3

review of THH's books and records. In response, Plaintiffs maintained that any knowledge gained by Stair was the result of reviewing books and records and was inadmissible hearsay. The Plaintiffs did not submit a counter affidavit or other sworn proof to rebut the factual averments in the Stair affidavits.

Following a non-evidentiary hearing, the trial court agreed with Plaintiffs and denied THH's motion on the basis that the Stair affidavits were legally insufficient. THH appealed in Team Health Holdings, Inc. v. Caceres, 320 So. 3d 232 (Fla. 3d DCA 2021) (Caceres I). This court reversed the order denying THH's motion to dismiss, holding that the Stair affidavits *were* legally sufficient and, as a result, the burden returned to Plaintiffs "to prove by sworn proof of their own 'the basis upon which jurisdiction may be obtained.'" Id. (quoting Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla.1989)). If such sworn proof could be "harmonized" with the Stair affidavits, the trial court, on remand, would "make a decision based on undisputed facts." If the affidavits were in conflict, however, the trial court would hold an evidentiary hearing to determine the jurisdictional issue. Id.

**Proceedings on Remand and the Instant Appeal**

Following remand, the trial court scheduled a non-evidentiary hearing. Once again, the Stair affidavits—which this court in Caceres I found were

4

legally sufficient to contest the jurisdictional allegations in the complaint—were before the court.  <u>Caceres I</u>, 320 So. 3d at 235 (" "[I]t is undisputed THH submitted sworn proof contesting the jurisdictional allegations in the operative complaint. At this point, the allegations in the affidavit, or other sworn proof, are to be taken as true.")

The Stair affidavits averred, in relevant part:

● THH is a Delaware company with its principal place of business in Tennessee;

● THH has no employees in Florida;

● While its subsidiaries do business in Florida, THH does not;

● THH never assumed responsibility for IPC's operations, claims, obligations, liabilities, debts or duties;

● THH and IPC—both before and after the 2015 merger—were and are separate, active corporations;

● IPC was never "integrated" into THH, and never became or was treated as an internal division of THH;

● Since the 2015 merger, IPC "possessed complete operational control over its basic, day-to-day operations and internal affairs."

● The TEAMHealth brand and logo is associated with numerous subsidiaries and affiliates throughout the country and "denotes nothing more than a particular entity's affiliated relationship with the TEAMHealth organization."

Plaintiffs did not file any affidavits or other sworn proof to counter, contest or rebut the averments in the Stair affidavits.  Instead, Plaintiffs relied

5

upon the following documents in support of its position that THH was engaged in substantial and not isolated activity in the State and therefore satisfied the general jurisdiction requirements of section 48.193(2), Florida Statutes (2010):

● The Corporate Integrity Agreement between THH and the federal government, entered into in 2017, *nearly seven years after* the alleged acts giving rise to Plaintiffs' lawsuit.

● Printouts from the SEC and THH websites (e.g., webpage printouts of press releases, the company handbook, the TEAMHealth Compliance Program[1]), and an affidavit from Kevin Mulligan (a computer engineer) attesting to the authenticity of the website materials.

Plaintiffs maintained that, even though THH was a Delaware corporation with its principal place of business in Tennessee, it exercised operational control of its Florida subsidiary IPC, that IPC's substantial and not isolated activity within Florida was as an agent of its principal THH, and, pursuant to this agency theory, THH was subject to the jurisdiction of Florida courts under the general jurisdiction provisions of section 48.193.[2] To

---

[1] For instance, webpage printouts pertaining to the TEAMHealth Compliance Program defined the term "TeamHealth" to include "TeamHealth, Inc., and all of its related entities, companies, affiliates and subsidiaries."

[2] In the trial court, Plaintiffs argued only general jurisdiction as its purported basis for personal jurisdiction of THH. At no time did Plaintiffs contend that specific jurisdiction, pursuant to section 48.193(1)(a), Fla. Stat. (2010), provided a basis to exercise personal jurisdiction over THH. We decline Plaintiffs' implicit suggestion (raised by its answer brief) that this court should address the merits of this issue for the first time on appeal. See Wadley v.

support its position, Plaintiffs relied on provisions in the Corporate Integrity

Agreement between THH and the federal government, including Article III.,

section E., which provides in relevant part:

> TeamHealth shall develop and implement a centralized annual risk assessment and internal review process to identify and address risks associated with TeamHealth's HMD Operations' participation in the Federal health care programs. The risk assessment and internal review process shall require the HMD Compliance Committee together with other compliance, legal, and department leaders, at least annually to [] identify and prioritize risks associated with HMD Operations, [] develop internal audit work plans related to the identified risk areas . . ., [] implement the internal audit work plans . . . .

At the conclusion of the non-evidentiary hearing, the trial court found

that the documents submitted by Plaintiffs showed THH had operational

control over its subsidiary, IPC, and that the subsidiary was in effect acting

as the agent of the parent thus satisfying general jurisdiction requirements

and subjecting THH to the court's jurisdiction.  The trial court's written order

adopted the findings of fact and conclusions of law made at the hearing, and

Nazelli, 223 So. 3d 1118, 1123 (Fla. 3d DCA 2017) ("Because the plaintiffs failed to preserve their objection to the dismissal of their complaint with prejudice; request leave to amend their complaint to state a cause of action for fraudulent inducement; or otherwise attempt to argue that the tortious act they were relying on to establish specific jurisdiction over Nazelli was fraudulent inducement, we find no error with the trial court's determination that the plaintiffs failed to allege sufficient jurisdictional facts to bring the plaintiffs' actions within the ambit of Florida's long-arm statute, section 48.193(1)(a) 2.")

7

again concluded that Plaintiffs satisfied their burden to establish personal jurisdiction over THH under section 48.193, Florida Statutes (2021), and to establish sufficient "minimum contacts" with Florida to satisfy constitutional due process safeguards. This appeal followed.

## STANDARD OF REVIEW

"A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo." Caceres, 320 So. 3d at 234 (citing Castillo v. Concepto Uno of Miami, Inc., 193 So. 3d 57, 59 (Fla. 3d DCA 2016)).

## ANALYSIS AND DISCUSSION

On appeal, THH contends that, because the Corporate Integrity Agreement can be harmonized with the Stair affidavits, that Agreement cannot establish general jurisdiction over THH—i.e., it fails to show that THH engaged in "continuous and systematic" conduct so as to render it "at home" in Florida or that it had sufficient "minimum contacts" in Florida. We agree.[3]

---

[3] THH also contends that the Corporate Integrity Agreement does not constitute the requisite "sworn proof" to rebut THH's affidavit. While we are unpersuaded by THH's argument that sworn proof is the only type of proof that can satisfy this burden, we need not reach this question because, even if Plaintiffs were permitted to rely upon the contents of the Corporate Integrity Agreement in their effort to meet their evidentiary burden, the contents of that Agreement fail to refute the sworn proof submitted by THH.

At the outset, we note (as we did in <u>Caceres</u> I) that the Stair affidavits shifted the burden to Plaintiffs to prove "the basis upon which jurisdiction may be obtained." <u>Id.</u> at 235.

The Florida Supreme Court has set forth a two-step process for determining whether personal jurisdiction exists over a foreign corporation. The trial court must determine whether:

> (1) there exist sufficient jurisdictional facts to bring the action within the purview of Florida's long-arm statute, section 48.193, Florida Statutes; and (2) whether the foreign corporation possesses sufficient minimum contacts with Florida to satisfy federal constitutional due process requirements.

<u>Highland Stucco and Lime Prods., Inc.</u>, 259 So. 3d 944, 948 (Fla. 3d DCA 2018) (citing <u>Venetian Salami Co. v. Parthenais</u>, 544 So. 3d 499, 501-02 (Fla. 1989)).

The first jurisdictional prong is of statutory dimension and is satisfied by establishing either general jurisdiction or specific jurisdiction:

> General jurisdiction is established where the defendant has engaged in substantial and not isolated activity within the state. In other words, *the defendant's affiliations with the state are so continuous and systemic as to render it essentially at home in the forum state.* Specific jurisdiction, on the other hand, is established by pleading specific facts that demonstrate that the defendant's conduct fits within one or more subsections of section 48.193.

9

Id. (citations and quotations omitted) (emphasis added).[4]

As applied in the context of foreign corporations and their Florida subsidiaries, we begin with this established principle:

> It is well-settled that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction.  See, e.g., Walt Disney Co. v. Nelson, 677 So. 2d 400, 403 (Fla. 5th DCA 1996); Qualley v. International Air Service Co., 595 So. 2d 194, 196 (Fla. 3d DCA 1992), *review dismissed*, 605 So. 2d 1265 (Fla.1992). However, when a parent exercises sufficient control over a subsidiary, that control establishes an agency and supports jurisdiction. E.g., State v. American Tobacco Co., 707 So. 2d 851, 854-55 (Fla. 4th DCA 1998); see also Bell Atlantic Corp. v. Associated Data Consultants, Inc., 714 So. 2d 523 (Fla. 4th DCA 1998). The amount of control exercised by the parent must be high and very significant. American Tobacco, 707 So. 2d at 851 (Fla. 4th DCA 1998).

Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1146-47 (Fla. 3d DCA 2007).

To meet this high bar, a plaintiff must show "operational control of the subsidiary by the parent" and control of the subsidiary's "daily basic operation." Id. (citing Kramer Motors, Inc. v. British Leyland, Ltd., 628 F. 2d 1175 (9th Cir. 1980) and Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335 (S.D. Fla.), aff'd 54 Fed. Appx. 492 (11th Cir. 2002)).

---

[4] The second jurisdictional prong is of constitutional dimension and "is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement." Highland, 259 So. 3d at 950.  Because Plaintiffs cannot satisfy the first prong, it is unnecessary for us to address the second prong.

Indeed, "the parent corporation . . . must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" Enic, PLC v. F.F. S. & Co., 870 So. 2d 888, 891 (Fla. 5th DCA 2004) (quotation omitted). In Enic, our sister court held that the parent corporation did not have operational control over its subsidiary for personal jurisdiction purposes because, although the subsidiary reported to its parent and the parent company approved a contract negotiated by the subsidiary, the parent "was not directly involved in the day-to-day operation" of the subsidiary, and the subsidiary's presence in Florida was primarily for the purpose of carrying on its own business rather than the business of its parent. Id. Compare John Scott, Inc. v. Munford, Inc., 670 F. Supp. 344 (S.D. Fla. 1987) (finding that personal jurisdiction existed under Florida's long-arm statute in light of prima facie evidence of agency relationship between a manufacturer and Florida furniture seller—the Florida company owned substantial stock of the foreign company; the foreign company received financing from the Florida company; and employees of the foreign company were paid by the Florida company). See also Lee-Bolton v. Koppers Inc., No. 1:10CV253/MCR/GRJ, 2013 WL 11522040, at *5 (N.D. Fla. Sept. 9, 2013) ("The fact that a holding company discusses profits, losses, and operations as joint operations with its

11

subsidiary in press releases, web sites, SEC filings or financial reports for the plain understanding of its shareholders, giving the appearance that the companies are intertwined, *does not alter their legal relationship or demonstrate sufficient operational control to justify personal jurisdiction under an agency theory*.") (emphasis added).

The contents of the Corporate Integrity Agreement fail to support Plaintiffs' contention that THH exercised the requisite operational control over IPC to overcome (or even rebut) the Stair affidavits and support the exercise of personal jurisdiction over THH.  For instance, the relevant portion of the Corporate Integrity Agreement provides  that "TeamHealth" would (i) "develop" and "implement" an internal review process "to identify and address risks associated with TeamHealth's HMD Operations' participation in the Federal health care programs," and (ii) that such process required "the HMD Compliance Committee together with other compliance, legal, and department leaders, at least annually to [] identify and prioritize risks associated with HMD Operations, [] develop internal audit work plans related to the identified risk areas . . ., [] implement the internal audit work plans . . . ."

The trial court homed in on the use of the entity "TeamHealth", concluding that this was a reference to THH's board of directors. However,

12

there was no sworn proof provided by Plaintiffs to support this conclusion; in fact, the only sworn proof on the subject is to the contrary, as set forth in the Stair affidavit, which averred:

> **References to Team Health, TeamHealth or TEAMHealth are references to** a registered, trade-marked name that is **the brand name and logo** associated with the numerous operating subsidiaries and medical groups throughout the country affiliated with the TeamHealth brand and the TeamHealth organization. **They are not references to a particular entity, such as Team Finance, THI or THH.** The use of the TEAMHealth brand and logo denotes nothing more than a particular entity's affiliated relationship with the TEAMHealth organization. AmeriTEAM Services, LLC owns and administers the TEAMHealth website.

(Emphasis added). Similarly, the first page of the Corporate Integrity Agreement clarifies that both THH and its "subsidiaries or affiliates listed in Exhibit A (collectively 'TeamHealth')" were the parties to the Agreement. And Plaintiffs submitted no evidence (only its own "interpretation" of the Agreement) to suggest that the reference to "TeamHealth" was necessarily THH.

To establish that THH had operational control over its subsidiaries, Plaintiffs argued that the Corporate Integrity Agreement shows THH:

> ● Assumed responsibility for implementing and ensuring compliance with rules and regulations for federal and state Medicare/Medicaid programs for all 29 subsidiaries including those in Florida.
>
> ● Had to exert control over any operations concerning reporting and billing all claims.

13

But even if we accept Plaintiff's characterization of the Agreement's terms, these provisions fail to carry the day, as they concern the very narrow aspect of THH's obligations to federal and state Medicare and Medicaid programs, and do not establish THH's control of its subsidiaries' day-to-day affairs or its overall operations.

Stated differently, the 29 subsidiaries of THH are health care providers, and the underlying lawsuit is a medical negligence case—not one pertaining to Medicare/Medicaid fraud and/or medical billing. Even assuming (as Plaintiffs contend) that THH was somehow acting as an agent for IPC in enforcing its subsidiaries' compliance with federal and state Medicare and Medicaid programs, this falls far short of demonstrating that THH controls IPC's day-to-day operations or controls IPC to the extent that the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." Enic, 870 So. 2d at 891. See also Banco Cont'l, S.A. v. Transcom Bank (Barbados), Ltd., 922 So. 2d 395 (Fla. 3d DCA 2006).

The Stair affidavits and the Corporate Integrity Agreement and other proof offered by Plaintiffs can be harmonized, leading inescapably to the conclusion that the trial court lacked personal jurisdiction over THH.

14

Plaintiffs failed to establish the very high level of control over IPC by THH to subject THH to general jurisdiction under section 48.193(2).

**CONCLUSION**

Because the affidavits presented by THH to contest the jurisdictional allegations can be harmonized with the proof offered in response by Plaintiffs, and because those harmonized facts fail to establish general jurisdiction under section 48.193, we reverse the order denying THH's motion to dismiss and remand for the trial court to enter an order of dismissal as to THH.

Reversed and remanded with directions.