FILED
04/29/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2019 Session

## CANNON AND ASSOCIATES, LLC v. HILLCREST HEALTHCARE, LLC

Appeal from the Chancery Court for Davidson County
No. 17-1010-III      Ellen H. Lyle, Chancellor

_____

No. M2018-00929-COA-R3-CV

_____

This case involves the enrollment of a foreign judgment in Tennessee. The trial court granted summary judgment in favor of the plaintiff, effectively enrolling the foreign judgment, rendered in Florida, pursuant to the Full Faith and Credit Clause of the United States Constitution and Tennessee's Uniform Foreign Judgment Enforcement Act. On appeal, the defendant argues that the granting of summary judgment was improper because the Florida court lacked personal jurisdiction over defendant. Because we conclude that genuine issues of material fact remain unresolved, the trial court's order granting summary judgment in favor of the plaintiff is vacated and remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

W.H. Stephenson, II, Nashville, Tennessee, for the appellant, Hillcrest Healthcare, LLC d/b/a Hillcrest Healthcare Center.

Philip L. Robertson and Brittany M. Bartkowiak, Franklin, Tennessee, for the appellee, Cannon and Associates, LLC d/b/a Polaris Group.

## OPINION

### Background

I.

Hillcrest Healthcare, LLC ("Hillcrest" or "Appellant") is a healthcare facility that was organized in 1995 and is located in Ashland City, Tennessee. In 2010, Hillcrest entered into a management agreement with Beacon-Ashland City, LLC ("Beacon") wherein Beacon assumed all of the day-to-day responsibilities of running the facility. The agreement indicated that Beacon was an independent contractor of Hillcrest, and that Beacon would have "ultimate control and decision-making authority over the assets and operation of the facility during the [m]anagement [t]erm." At all times relevant to this appeal, J. David Hightower ("Mr. Hightower") has been the registered agent for service of process for Hillcrest with the Tennessee Secretary of State.[1]

On April 15, 2015, Beacon entered into a series of contracts for collection services[2] with Cannon and Associates, LLC d/b/a/ Polaris Group ("Polaris" or "Appellee"), a company organized under the laws of Florida and located in Tampa, Florida. Although the contract between Beacon and Polaris indicated that Polaris's services would be "provided both onsite and offsite as needed[,]" the contract did not indicate whether Polaris's services would be rendered in Florida or if employees of Polaris would travel to Tennessee to assist Beacon. The contract did, however, provide that Beacon would bear the cost of any travel required by Polaris personnel. Moreover, this contract provided that the agreement of the parties "shall be governed by the laws of the State of Florida." Marcella Bryant was the Beacon administrator who signed the April 15, 2015 contract with Polaris. Then, on June 15, 2015, another nearly identical contract was entered into by Beacon and Polaris. This second contract contained largely the same provisions as the April contract, except that this contract inexplicably provided that it would be governed by the laws of the State of Arkansas. Further, this second contract between Beacon and Polaris was signed by a different Beacon administrator, Hughes Ash.

Shortly after Beacon entered into the two contracts for collection services with Polaris, Beacon's relationship with Hillcrest deteriorated. As such, Hillcrest terminated its management contract with Beacon in August of 2015.[3]

**II.**

---

[1] Mr. Hightower's exact role at Hillcrest is not entirely clear from the record; his affidavit states that he is the "lawful owner and officer" of Hillcrest, and that he has "full authority" to act on Hillcrest's behalf. It is unclear whether there are other owners and officers at Hillcrest or if Mr. Hightower is the sole owner.

[2] Specifically, Polaris contracted to "provide [the] facility with Accounts Receivable Assistance" and Medicare and Medicaid billing support.

[3] The record does not indicate what became of Beacon after the contract between Hillcrest and Beacon was terminated; in any event, Beacon was never made a party to these proceedings and does not participate in the present appeal.

After the contract between Hillcrest and Beacon was terminated, Polaris filed suit against Hillcrest in the Thirteenth Judicial District for Hillsborough County, Florida ("the Florida court"). The complaint alleged that Hillcrest was responsible for the balance owing on the contract between Beacon and Polaris. An affidavit of service was filed with the Florida court on March 10, 2016, indicating that the complaint and summons had been served on Hillcrest on February 29, 2016, at its business address in Ashland City, Tennessee. The affidavit of service further indicated that the documents were left with "Jennifer Ambrosch, a person authorized to accept service."[4] Hillcrest never responded to the complaint in the Florida court and, as such, a default judgment was entered against Hillcrest on or about June 17, 2017, in the amount of $17,953.15.

**III.**

Following the Florida court's entry of the default judgment against Hillcrest, Polaris sought to have the judgment enrolled in Tennessee by filing a verified petition to enroll the Florida judgment on September 18, 2017, in the Chancery Court for Davidson County Tennessee ("the trial court"). An authenticated copy of the default judgment was attached to the verified petition. Hillcrest filed a response, asserting that the Florida judgment was not entitled to full faith and credit in Tennessee. In support, Hillcrest argued that it had never had any contact with the State of Florida and that the default judgment was rendered without proper service of process. Simply put, Hillcrest disputed that it was ever subject to personal jurisdiction in the Florida court.

On February 1, 2018, Polaris filed a motion for summary judgment to enroll the judgment. Therein, Polaris asserted that Hillcrest could provide no evidence to support a defense to the proposed enrollment of the Florida judgment and that Hillcrest's attacks on the foreign judgment were barred by the doctrine of res judicata. Polaris asserted that Hillcrest could not assert a personal jurisdiction defense because "lack of jurisdiction is a defense that must be raised in a responsive pleading or by motion[,] otherwise it is waived." Moreover, with regard to Hillcrest's argument that it never received service of process, Polaris argued that Hillcrest was properly served on February 29, 2016, when the complaint and summons was left with Jennifer Ambrosch at the Hillcrest facility. Moreover, Polaris included a sworn affidavit of its president and CEO, Charles Cave, wherein Mr. Cave asserted that Hillcrest and Polaris were parties to an agreement and that Polaris had served Hillcrest with a copy of the complaint and summons at the Hillcrest facility in Ashland City, Tennessee. Accordingly, Polaris asserted that the Florida judgment was entitled to full faith and credit as a matter of law, and that Hillcrest could not provide any evidence to the contrary. To that end, Polaris's statement of undisputed facts averred that "Hillcrest cannot bring forth the evidence to support any of its alleged affirmative defenses."

---

[4] Neither party has ever clarified who Ms. Ambrosch is, what role she played at Hillcrest, or why she is purported to have been authorized to accept service on behalf of Hillcrest.

Hillcrest responded to this motion by again raising the issues of personal jurisdiction and insufficient service of process and disputing the assertion that Hillcrest lacked evidence to support its personal jurisdiction argument. Hillcrest attached to its response the sworn affidavit of Mr. Hightower, in which Mr. Hightower stated that he was the lawful agent for service of process for Hillcrest and that he was never served with the complaint and summons issued by the Florida court. Further, Mr. Hightower stated in his affidavit that Hillcrest never engaged in any business with Polaris or the State of Florida. With regard to the contract entered into by Beacon and Polaris, Mr. Hightower asserted that Hillcrest was not a party to this contract and that Beacon, at all relevant times, acted as an independent contractor rather than an agent of Hillcrest. Hillcrest also submitted a sworn affidavit from Marcella Bryant, the Beacon administrator whose signature appears on the April 2015 contract between Polaris and Beacon. Ms. Bryant stated that she entered into the agreement with Polaris not at the behest of Mr. Hightower or Hillcrest, but rather under the direction of other Beacon administrators. Ms. Bryant also stated that it was her understanding that neither Mr. Hightower nor any other officers of Hillcrest were ever apprised of the contracts between Beacon and Polaris. Accordingly, Hillcrest's proffered statements of undisputed material facts averred that Polaris could offer no proof that Hillcrest or Mr. Hightower ever engaged in contact with the State of Florida sufficient for Florida to exercise personal jurisdiction over Hillcrest. Hillcrest also disputed that Hillcrest was properly served with the original complaint and summons.

The trial court held a hearing on Polaris's motion for summary judgment on April 6, 2018. On April 20, 2018, the trial court entered an order in which it concluded that there were no genuine issues of material fact, and that the Florida judgment was entitled to full faith and credit in Tennessee. With regard to the issue of personal jurisdiction, the trial court concluded that the record, without dispute, established that Hillcrest was a party to the contract with Polaris, and further pointed out that the April 2015 contract between Beacon and Polaris was controlled by Florida law. As such, the trial court determined that there was "no issue of fact that the parties agreed to Florida jurisdiction."

From this order, Hillcrest appeals.

**Issue Presented**

The single issue presented for review is whether the trial court erred in concluding that Polaris was entitled to summary judgment on its petition to enroll the Florida judgment in Tennessee.

**Standard of Review**

This case was decided on a motion for summary judgment. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant

to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. "[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

Finally, whether to grant full faith and credit to a foreign judgment is a question of law, and therefore, we review the decision de novo upon the record with no presumption or correctness for the trial court's conclusions of law. *Minor Miracle Prods., LLC v. Starkey*, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *4 (Tenn. Ct. App. Jan. 12, 2012); *W & T, Inc. v. Ham*, No. M2006-01617-COA-R3-CV, 2009 WL 225256, at *3 (Tenn. Ct. App. Jan. 29, 2009).

## Discussion

## I.

The present case turns on whether the trial court correctly concluded that the Florida judgment against Hillcrest should be given full faith and credit in Tennessee. The Full Faith and Credit Clause of the United States Constitution provides: "Full Faith and Credit shall be given in each state to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. It is well-settled that the Full Faith and Credit Clause of the United States Constitution requires the judgment of a state court, having both personal and subject matter jurisdiction, be given the "same credit, validity and effect in the courts of every other state and that such judgment be equally conclusive upon the merits in the courts of the enforcing states." *Mirage Casino Hotel v. J. Roger Pearsall*, No. 02A01-9608-CV-00198, 1997 WL 275589, at *3 (Tenn. Ct. App. May 27, 1997). The Full Faith and Credit Clause manifests an important federal policy, one that makes the states "integral parts of a single nation throughout which a remedy upon a just

obligation might be demanded as of right, irrespective of the state of its origin." ***Milwaukee Cnty. v. M.E. White Co.***, 296 U.S. 268, 277, 56 S. Ct. 229, 80 L.Ed. 220 (1935).

Tennessee's adoption of the Uniform Enforcement of Foreign Judgments Act ("UEFJA") provides a mechanism for a party to enroll a judgment from a sister state. *See* Tenn. Code Ann. §§ 26-6-101 to -108. The UEFJA provides, in relevant part, as follows:

> (a) A copy of any foreign judgment authenticated in accordance with the acts of congress or the statutes of this state may be filed in the office of the clerk of any circuit or chancery court of this state.
>
> (b) The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state.
>
> (c) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record in this state and may be enforced or satisfied in like manner.

Tenn. Code Ann. § 26-6-104. Accordingly, section 26-6-101 *et seq*. provides a mechanism by which Tennessee can give full faith and credit to foreign judgments, and Tennessee courts presume that "absent proper proof to the contrary . . . the decrees of the courts of record of any sister states are valid." ***Four Seasons Gardening & Landscaping, Inc. v. Crouch***, 688 S.W.2d 439, 441–42 (Tenn. Ct. App. 1984). Moreover, "[a] party who seeks to prevent the enrollment of a foreign judgment in Tennessee carries a 'stern and heavy' burden." ***Guseinov v. Synergy Ventures, Inc.***, 467 S.W.3d 920, 925 (Tenn. Ct. App. 2014) (citing ***Coastcom, Inc. v. Cruzen***, 981 S.W.2d 179 (Tenn. Ct. App. 1998); ***Dement v. Kitts***, 777 S.W.2d 33, 36 (Tenn. Ct. App. 1989)).

Nonetheless, a party may collaterally attack the validity of foreign judgment under certain circumstances; indeed, despite the strong policy underpinning the Full Faith and Credit Clause, three recognized exceptions to the enrollment of a foreign judgment exist. ***Mirage Casino-Hotel***, 1997 WL 275589 at \*4. Specifically, a Tennessee court may decline to accord full faith and credit to the judgment of another state if the judgment is: (1) void due to lack of personal or subject matter jurisdiction; (2) based upon fraud; or (3) where enforcement of the judgment would violate the public policy of the forum state. ***Id.*** Tennessee courts have recognized and embraced all three of these exceptions. *See, e.g.*, ***BancorpSouth Bank v. Johnson***, No. W2012-00452-COA-R3-CV, 2013 WL 3770856 (Tenn. Ct. App. July 16, 2013) (citing ***Trustmark Nat'l Bank v. Miller***, 209 S.W.3d 54, 57 (Tenn. Ct. App. 2006)) (recognizing the fraud exception); ***Four Seasons***, 688 S.W.2d at 445 (recognizing the personal jurisdiction and public policy exceptions).

Consequently, it has long been held in Tennessee that "[i]f the court rendering the judgment lacked personal jurisdiction over the parties, the judgment is void and not entitled to full faith and credit in this state." ***Pearl Equip., LLC v. Cartwright Const. Co.***, No. M2008-01109-COA-R3-CV, 2010 WL 3463201, at *2 (Tenn. Ct. App. Sept. 2, 2010) (citing ***Tareco Props., Inc. v. Morriss***, No. M2002-02950-COA-R3-CV, 2004 WL 2636705, at *9 (Tenn. Ct. App. Nov. 18, 2004)); *see also* ***Frazier v. Frazier***, 72 S.W.3d 333, 335 (Tenn. Ct. App. 2001) ("Two limited exceptions to the full faith and credit principle are where it can be shown that the rendering court lacked personal or subject matter jurisdiction."); ***Biogen Distrib., Inc. v. Tanner***, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992) ("The two most common circumstances when courts will refuse to give full faith and credit to a foreign judgment are when the court entering the foreign judgment had no personal or subject matter jurisdiction."); ***Four Seasons***, 688 S.W.2d at 442 ("Although final judgments entered by courts of other states are ordinarily conclusive, Article 4, Section 1 of the United States Constitution does not compel other states to grant these judgments full faith and credit when it is shown that the court entering the judgment did not have personal jurisdiction over the party against whom the judgment is sought to be enforced.").

In the present case, Hillcrest argues on appeal that one of the enumerated exceptions to full faith and credit, lack of personal jurisdiction, applies to the Florida judgment at issue. Hillcrest's argument is two-fold. First, Hillcrest urges that it was never a party to the contract between Polaris and Beacon, and that at the time Beacon entered the contract, it was operating merely as an independent contractor that remained liable for its own debts. As such, Hillcrest asserts that it has never had sufficient, if any, contact with the State of Florida such that it was appropriate for the Florida court to exercise personal jurisdiction over Hillcrest. Second, Hillcrest asserts that the service of process related to the original lawsuit was improper; specifically, Hillcrest avers that Mr. Hightower has always been the registered agent for Hillcrest and that Mr. Hightower never received notice of the Florida lawsuit. In support, Hillcrest notes that service of process was made on someone named Jennifer Ambrosch, and that it is entirely unclear from the record who Ms. Ambrosch is or why Polaris believed that she could accept service for Hillcrest.

On balance, Polaris argues that Hillcrest has not put forth sufficient evidence to rebut the presumption that the Florida judgment is valid and enforceable. With regard to Hillcrest's argument that the Florida court lacked personal jurisdiction, Polaris simply asserts that "[l]ack of jurisdiction was waived by the failure to raise that defense in the underlying litigation." Polaris further points out that "Hillcrest failed to file any responsive pleadings or motions. . . . [t]hus, the present argument that the Florida [c]ourt lacked jurisdiction has been waived and is barred by res judicata." Polaris also argues that even if personal jurisdiction were not waived, Hillcrest's actions through Beacon would be sufficient minimum contacts for Florida to acquire personal jurisdiction over Hillcrest. In support, Polaris urges that the place of performance and payment of the contract

between Beacon and Polaris was Florida, and that the contract provided that it would be controlled by Florida law.[5] Finally, Polaris argues that service of process was proper under Florida law, because service was delivered to Hillcrest's business address pursuant to its registration with the Tennessee Secretary of State. Polaris's overall contention on appeal is that there are no genuine issues of material fact that remain in dispute and that Hillcrest's personal jurisdiction argument is meritless.

## II.

We begin with Polaris's threshold arguments concerning waiver and res judicata. Both arguments lack merit. First, Polaris maintains that Hillcrest is barred from raising the issue of personal jurisdiction because it should have been raised in the Florida court. Respectfully, this is an inaccurate statement of the law. The Full Faith and Credit Clause "does not compel other states to grant [foreign] judgments full faith and credit when it is shown that the court entering the judgment did not have personal jurisdiction over the party against whom the judgment is sought to be enforced." *Four Seasons*, 688 S.W.2d at 442. Despite Polaris's argument, challenging the personal jurisdiction of the forum that rendered the judgment is a proper way to challenge the enrollment of a foreign judgment in Tennessee. *Pearl Equipment*, 2010 WL at *2 (citing *Howard Johnson, Inc. v. Holyfield*, No. W2008-02405-COA-R3-CV, 2009 WL 1349197, at *2 (Tenn. Ct. App. May 14, 2009)) ("[A]n enrolled foreign judgment, treated in the same manner as a judgment of a court of record of this state, and subject to the same defenses, may be attacked on the grounds found in Tennessee Rule of Civil Procedure 60.02. . . . [b]ecause Rule 60.02(3) permits a court to set aside a judgment if that judgment is void, Tennessee courts will commonly refuse to give full faith and credit to a foreign judgment where the court entering the foreign judgment had no personal jurisdiction."); *Tareco Props., Inc. v. Morriss*, No. M2002-02950-COA-R3-CV, 2004 WL 2636707, at *9 (Tenn. Ct. App. Nov. 18, 2004) (noting that if the court rendering the judgment lacked personal jurisdiction over the parties, the judgment is void and not entitled to full faith and credit in this state.) Moreover, it is undisputed here that Hillcrest never made a general appearance in the Florida court such that personal jurisdiction was waived. *See generally Caldwell v. Caldwell*, 921 So. 2d 759, 760 (Fla. Dist. Ct. App. 2006) ("By entering a general appearance without contesting personal jurisdiction, [defendant] waived this defense."); *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988) ("Thus, if a party makes a general appearance and does not take issue with venue, adequacy of service of process, personal jurisdiction, or other similar matters, the courts customarily find that the party has waived its objections to these matters.").

---

[5] Inexplicably, Polaris does not address the fact that the record contains two different contracts between Beacon and Polaris and that the second contract provides that it is controlled by Arkansas law. As such, Polaris appears to suggest that the first contract between Beacon and Polaris is the controlling contract, but offers no support or legal authority for this position.

We are likewise unconvinced by Polaris's argument that Hillcrest is barred from raising the issue of personal jurisdiction by the doctrine of res judicata. In its brief, Polaris urges that "a default judgment is a final adjudication on the merits and has *res judicata* effect" and that as such, Hillcrest's "affirmative defenses and the assertions of fact to support them became immaterial upon entry of the Foreign Judgment." Again, this argument reveals a misunderstanding of the applicable law. It is well-settled that a "party asserting a defense predicated on res judicata or claim preclusion must demonstrate[,]" *inter alia*, "that the underlying judgment was rendered by a court of competent jurisdiction." **Jackson v. Smith** 387 S.W.3d 486, 492 (Tenn. 2012). *See also* **Collins v. Sams East, Inc.**, No. W2017-00711-COA-R3-CV, 2018 WL 1299857, at \*7 (Tenn. Ct. App. Mar. 13, 2018) ("The doctrine of res judicata cannot be invoked unless all its essential elements are present, and each necessary element must be established beyond all question."). As discussed at length *supra*, Hillcrest's central contention is that the Florida court lacked personal jurisdiction to enter the judgment against it. If Hillcrest prevails on this claim, the foreign judgment simply cannot have preclusive effect. As such, Hillcrest is not barred from raising this defense in order to avoid enrollment of the foreign judgment.

## III.

Because attacking the original court's personal jurisdiction is a proper way to challenge the enrollment of a foreign judgment, we perceive the dispositive issue to be whether the Florida court acquired personal jurisdiction over Hillcrest such that the default judgment was valid. If the Florida court lacked personal jurisdiction, Tennessee is not compelled to enforce the Florida judgment with full faith and credit, and summary judgment in favor of Polaris was inappropriate. *See* **Four Seasons**, 688 S.W.2d at 442. As such, a review of the law on personal jurisdiction is in order.

Tennessee law makes clear that in addressing this issue, we look to Florida's statutes "and the cases construing it" to render our decision. *Id.* at 442 ("The courts of this State must look to the jurisdictional statutes of the state in which the judgment sought to be enforced was entered when determining whether that court had obtained personal jurisdiction over the non-resident defendant.") (citing **Diners Club, Inc. v. Makoujy**, 110 Misc.2d 870, 443 N.Y.S.2d 116, 118 (1981); **McGinnis v. McGinnis**, 44 N.C. App. 381, 261 S.E.2d 491, 496 (1980)); *see also* **Pearl Equipment**, 2010 WL 3463201, at \*3 ("[W]hen a foreign judgment is attacked here, the focus should be on what effect the attack would have in the forum that rendered the judgment. . . . when the rendering court's jurisdiction over the parties is attacked, we must look to the law of the jurisdiction where the judgment was entered."); **Biogen Distrib.**, 842 S.W.2d at 256 ("Parties seeking to undermine the validity of a foreign judgment . . . must demonstrate that the foreign court did not acquire jurisdiction under the law of the state where the judgment was obtained."); **Frazier**, 72 S.W.3d at 336 ("To mount a successful collateral attack upon [a] final decree of divorce entered in Illinois, it must be shown that Illinois lacked

jurisdiction, as determined by Illinois law."). Thus, in the present case, "our inquiry should be limited to [Florida's] long arm statute and the cases construing it to determine whether [the Florida court] had properly acquired personal jurisdiction" over Hillcrest at the time the default judgment was entered. *Four Seasons*, 688 S.W.2d at 442.

**IV.**

Like Tennessee and other states, the Florida legislature has enacted a long-arm statute providing for personal jurisdiction over out-of-state residents. *See generally* Fla. Stat. Ann. § 48.193. Through this enactment, Florida's "legislature has determined the requisite basis for obtaining [personal] jurisdiction over nonresident defendants as far as Florida is concerned." *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 500 (Fla. 1989). A nonresident defendant must fall within the ambit of at least one subsection of section 48.193 before a Florida court may exercise personal jurisdiction over that party. *Id.* Relevant to this case, section 48.193 provides that

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> * * *
>
> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla. Stat. Ann. § 48.193(1)(a). In addition to compliance with the long-arm statute, "in cases involving jurisdiction over nonresidents, there are constitutional issues which [the Florida courts] must also consider." *Venetian Salami*, 554 So.2d at 502 (citing *Osborn v. University Society, Inc.*, 378 So.2d 873, 874 (Fla. Dist. Ct. App. 1979)). Specifically, in addition to satisfying the long-arm statute, a party must have had sufficient minimum contacts with the State of Florida in order for Florida to acquire personal jurisdiction:

> Long ago, the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), held that in order to subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. More recently, the same Court stated that the test is whether the defendant's conduct in connection with the forum state is "such that he should reasonably anticipate being haled into court there." *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980).

*Id.* at 500. Accordingly, Florida law mandates a two-part inquiry "in determining whether long-arm jurisdiction is appropriate in a given case[.]" *Id.* (citing *Unger v. Publisher Entry Serv., Inc.*, 513 So.2d 674, 675 (Fla. Dist. Ct. App. 1987)). "First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the [long-arm] statute[.]" *Id.* Next, the court must conclude that "sufficient minimum contacts are demonstrated to satisfy due process requirements." *Id.*

To satisfy the second prong of this analysis, a party's contact with the State of Florida must (1) relate to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant has purposefully availed itself of the privileges of conducting activities within the state; and (3) the contact with the forum must be such that the defendant should reasonably anticipate being haled into court there. *Moro Aircraft Leasing, Inc. v. Int'l Aviation Mktg., Inc.*, 206 So.3d 814, 817 (Fla. Dist. Ct. App. 2016) (citing *Corporacion Aero Angeles, S.A. v. Fernandez*, 69 So.3d 295, 299 (Fla. Dist. Ct. App. 2011)).

Importantly, the Florida Supreme Court has rejected "talismanic jurisdictional formulas" in determining whether a party's relationship to Florida satisfies the minimum contacts requirement. *Venetian Salami*, 554 So.2d at 502. Instead, "the facts of each case must always be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* (quoting *Kulko v. California Superior Court*, 436 U.S. 84. 92, 98 S. Ct. 1690, 1696–97 (1978)). As such, "under a given factual situation, even though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state." *Id.*

Moreover, the Florida Supreme Court has expounded on the framework that courts should follow when a nonresident defendant attacks the court's personal jurisdiction, and the facts alleged by the parties are in direct conflict. In *Venetian Salami*, the Florida plaintiff sought to have the Florida trial court exert personal jurisdiction over a Canadian company based on the allegation that the parties had entered into a contract, and the defendant failed to tender payment. 554 So.2d at 500. After the defendant was served, it moved to quash service of process based upon lack of personal jurisdiction. *Id.* at 500. Both parties filed sworn affidavits supporting their positions; specifically, the defendant filed an affidavit from its president, wherein the president asserted that the defendant was a Canadian corporation that conducted no business in Florida, and further asserted that the defendant "never reached any agreement with the [the plaintiff], much less an agreement to pay any money in Florida." *Id.* at 503. The trial court dismissed the suit based on lack of personal jurisdiction; however, the First District Court of Appeals reversed, finding that "jurisdiction over [the defendant] had been obtained because the

complaint alleged facts sufficient to fall within the scope of section 48.193(1)(g) and that when these allegations were challenged, they were backed by affidavit." *Id.* at 500.

On appeal, the Florida Supreme Court determined that the lower court of appeals erred in concluding that personal jurisdiction existed where both parties had filed sworn affidavits addressing the underlying facts regarding personal jurisdiction, and those facts were irreconcilable. In so holding, the supreme court highlighted the problem created by such a situation:

> Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Fla. R. Civ P. 1.070(i); *Jones v. Jack Maxton Chevrolet, Inc.,* 484 So.2d 43 (Fla. 1st DCA 1986). By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. *Elmex Corp. v. Atlantic Fed. Savings & Loan Ass'n,* 325 So.2d 58 (Fla.4th DCA 1976). **A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained**. *Elmex Corp.* In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed. However, the question remains with respect to what should be done if the relevant facts set forth in the respective affidavits are in direct conflict. There is no Florida decision on this question, and the instant case highlights the dilemma.

*Id.* at 502–03 (emphasis added). In that case, the facts in the parties' sworn affidavits could not be reconciled; indeed, the court stated that "the facts set forth in [the plaintiff's] affidavits would be sufficient to establish [defendant's] minimum contacts with the state[,]" but also that the "[defendant] denies that the parties reached any agreement whatsoever." *Id.* Further, the court noted that "the mere failure to pay money in Florida, standing alone[,]" likely would not "suffice to obtain jurisdiction over a nonresident defendant." *Id.* at 503. Consequently, the *Venetian Salami* court reversed and remanded the case back to the trial court so that an evidentiary hearing could be held, and a decision regarding personal jurisdiction reached. The ultimate conclusion of the court was that where facts underpinning the assertion of long-arm jurisdiction are disputed, the court must hold a limited evidentiary hearing in order to determine whether jurisdiction exists.

The analysis applied by the *Venetian Salami* court has been reiterated many times, and it is now well-settled in Florida that where a defendant files an affidavit that "fully disputes the jurisdictional allegations in the complaint, the burden shifts back to the

[plaintiff] to prove by affidavit or other sworn proof that a basis for long-arm jurisdiction exists." ***Teva Pharmaceutical Indus. v. Ruiz***, 181 So.3d 513, 519 (Fla. Dist. Ct. App. 2015). In ***Teva***, for example, the plaintiff alleged that the defendant pharmaceutical company produced a contaminated drug that was used on the plaintiff during surgery, resulting in permanent injury. ***Id.*** at 517. The complaint alleged that Teva Pharmaceuticals USA was a wholly owned subsidiary of Teva Industries, and that Teva USA manufactured, distributed, and sold the drug at issue. ***Id.*** As such, the complaint averred that Teva Industries was responsible for any torts committed by Teva USA. ***Id.*** In response, Teva Industries filed a motion to dismiss wherein it alleged that it was an Israeli company that exercised no control over Teva USA's manufacturing operations, and had no contact with the State of Florida. ***Id.*** The trial court denied the motion to dismiss, which Teva Industries then appealed. ***Id.***

On appeal, the Second District Court of Appeals acknowledged that the plaintiff had satisfied his initial pleading requirement, and that "the burden then shifted to Teva Industries to file a legally sufficient affidavit or other sworn proof [contesting] the essential jurisdictional facts" of the complaint. ***Id.*** at 518. However, the court then explained that Teva Industries satisfied this burden when it submitted the affidavit of its vice president of finance to rebut the allegation that it was subject to Florida's jurisdiction. ***Id.*** Specifically, this affidavit averred that Teva Industries "conducts no business and has no connection to either Florida or this litigation." ***Id.***

Based on this affidavit, the appellate court concluded that Teva Industries had successfully shifted the burden of establishing personal jurisdiction back to the plaintiff. ***Id.*** at 519. Because the plaintiff then responded to the allegations in the affidavit, the court ultimately decided that there was a conflict in the evidence and that the trial court should have held a hearing to resolve the disputed issues of facts. ***Id.*** at 520. Notably, the ***Teva*** court pointed out that "an evidentiary hearing under ***Venetian Salami*** resolves the factual disputes necessary to determine jurisdiction pursuant to section 48.193 as well as whether minimum contacts exists to satisfy due process concerns." ***Id.*** at 521.

The pertinent take-away from ***Venetian Salami*** and ***Teva*** is that once a nonresident defendant puts forth sworn proof rebutting the allegation that personal jurisdiction exists, the burden of establishing personal jurisdiction shifts back to the plaintiff. Moreover, these cases demonstrate that it is inappropriate for a trial court to leave factual conflicts regarding personal jurisdiction unresolved. As stated *supra*, this procedure is well-settled practice in Florida. *See, e.g.*, ***County of Cumberland v. Kwap***, 220 So.3d 1207 (Fla. Dist. Ct. App. 2017) (trial court erred in failing to consider the conflicting evidence on personal jurisdiction where New Jersey defendant submitted sworn affidavit that the tort at issue was committed by an independent contractor of the defendant, rather than the defendant itself); ***S. Wall Prod., Inc. v. Bolin***, 251 So.3d 935 (Fla. Dist. Ct. App. 2018) (noting that where a plaintiff sufficiently alleges basis for long-arm jurisdiction, the burden shifts to the defendant to contest those allegations; if

- 13 -

adequately contested by affidavit or other proof, the burden then shifts back to the plaintiff to refute the evidence the defendant submitted by affidavit or other evidence); ***Packaging & Distrib. Res., LLC v. Duke Realty Ltd.***, 194 So.3d 509 (Fla. Dist. Ct. App. 2016) ("In most instances, the evidence presented by each side can be harmonized, and the trial court is in a position to make a determination based upon undisputed facts. However, if the evidence presented by the parties conflicts, the trial court must then hold a limited evidentiary hearing to resolve the jurisdictional issue.").[6]

Of course, Tennessee applies its own procedural law, including its summary judgment standard. ***Hamer v. Se. Res. Grp., Inc.***, No. M2015-00643-COA-R3-CV, 2016 WL 853020, at *4 (Tenn. Ct. App. Mar. 3, 2016) (citing ***Beach Cmty. Bank v. Labry***, No. W2011-01583-COA-R3-CV, 2012 WL 2196174, at *3 n.6 (Tenn. Ct. App. June 15, 2012)) ("Because Tennessee is the forum state for this case, the procedural law of Tennessee, including its summary judgment standard, applies."). Although the ultimate burden is on Hillcrest to avoid the foreign judgment, *see* ***Guseinov***, 467 S.W.3d at 925, because Polaris chose to file a summary judgment motion, we discern no palpable difference between the burden-shifting framework encompassed by Florida law and the Tennessee law applicable in this case.

For example, Tennessee's summary judgment standard also contains a burden-shifting analysis in this context. As explained by the Tennessee Supreme Court,

> [w]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 235, 265 (Tenn. 2015). It is then incumbent upon the nonmoving party to "respond, and by affidavits or one of

---

[6] We must acknowledge that the Florida cases cited herein generally deal with motions to dismiss, rather than motions for summary judgment. Nonetheless, we discern no error in relying on these cases, as Tennessee law makes clear that both a motion to dismiss and a motion for summary judgment are intended to resolve issues of law. *See* ***Timmons v. Lindsey***, 310 S.W.3d 834, 838–39 (Tenn. Ct. App. 2009) (noting that whether to dismiss a cause of action for failure to state a claim for which relief can be granted is a question of law); ***Ray v. Neff***, No. M2016-02217-COA-R3-CV, 2018 WL 3493158, at *3 (Tenn. Ct. App. July 20, 2018) ("Summary judgment is appropriate when . . . there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). See also Tenn. R. Civ. P. 56.04. Moreover, the Florida courts' focus on the existence of disputed material facts concerning personal jurisdiction dovetails with Tennessee's summary judgment standard. *Compare* ***Venetian Salami***, 554 So.2d at 500–03, and ***Teva Industries***, 181 So.3d at 519, with ***Rye***, 477 S.W.3d at 264–65.

- 14 -

the other means provided in Tennessee Rule 56, set forth specific facts at the summary judgment stage showing that there is a genuine issue for trial." *Id.* at 264. Under *Rye*, when the nonmoving party raises a defense based on specific facts, the burden then shifts back to the moving party show they are entitled to judgment as a matter of law. *See* **Steele v. Primehealth Medical Center, P.C.**, No. W2015-00056-COA-R3-CV, WL 9311846, at *4 (Tenn. Ct. App. Dec. 22, 2015) (noting that summary judgment should only be granted if the "nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial.").

A similar framework applies to challenges to personal jurisdiction, even when raised in the context of a motion to dismiss. Indeed, Tennessee law makes clear that where a defendant properly raises the issue of lack of personal jurisdiction, i.e., by filing affidavits and other evidence, the ultimate burden shifts to the plaintiff to show personal jurisdiction. *See* **Gordon v. Greenview Hosp. Inc.**, 300 S.W.2d 635, 643 (Tenn. 2009) (noting that the plaintiff bears the ultimate burden of demonstrating that the trial court may exercise personal jurisdiction over the defendant, although "[t]he burden is not ordinarily a heavy one."); *see also* **First Cmty. Bank., N.A. v. First Tennessee Bank, N.A.**, 489 S.W.3d 369, 382 (Tenn. 2015) (same); **Humphreys v. Selvey**, 154 S.W.3d 544, 548 (Tenn. Ct. App. 2004) ("The plaintiff has the burden of establishing a prima facie case that personal jurisdiction over a defendant is proper."). Where a defendant submits affidavits in support of an attack on personal jurisdiction, "the plaintiff must establish its prima facie showing of personal jurisdiction over the defendant by filing its own affidavits or other written evidence." **Gordon**, 300 S.W.3d at 644; *see also* **Humphreys**, 154 S.W.3d at 548 ("When a defendant files a motion to dismiss challenging the trial court's personal jurisdiction over him, the plaintiff must set out specific facts which demonstrate that the court has jurisdiction."). Accordingly, Tennessee's procedure dealing with a direct attack on a court's personal jurisdiction dovetails with Florida procedure under **Venetian Salami**.

Here, there can be no dispute that Hillcrest filed not one, but two, sworn affidavits contesting the facts underpinning Florida's personal jurisdiction over Hillcrest. These affidavits, if taken as true, show that Hillcrest's only contact with Florida occurred via Beacon, Hillcrest's independent contractor. By submitting these affidavits, Hillcrest complied with Florida law by "fully disput[ing] the jurisdictional allegations in the complaint[.]" **Teva**, 181 So.3d at 518. Moreover, Hillcrest complied with its responsibility under Tennessee summary judgment law to put forth evidence raising genuine issues of material fact. **Rye**, 477 S.W.3d at 264; *see also* **Gordon**, 300 S.W.3d at 644 (holding that when a defendant files affidavits sufficiently attacking personal jurisdiction, the burden is on the plaintiff to establish proper jurisdiction). As such, we conclude that Hillcrest has followed the proper procedure for attacking the personal jurisdiction of the Florida court, pursuant to both Florida and Tennessee law, such that the burden shifted to Polaris to demonstrate in the trial court that it was entitled to judgment as a matter of law, i.e., that Florida had personal jurisdiction over Hillcrest.

- 15 -

Going forward, we must consider whether Polaris met this burden by showing undisputed material facts sufficient to establish that the Florida court had personal jurisdiction over Hillcrest in this case. If Polaris cannot meet this burden, the outcome is not that Hillcrest definitively satisfied its "stern and heavy burden" in preventing the enrollment of a foreign judgment, but simply that summary judgment was inappropriate at this juncture. *Four Seasons*, 688 S.W.2d at 442.

V.

Consequently, we proceed to consider whether the trial court was correct in granting summary judgment to Polaris. In its final order, the trial court stated that there were "no genuine issues of material fact[,]" and that "there is no issue of fact that the parties agreed to Florida jurisdiction." In determining whether the trial court erred in its finding, we look to Florida caselaw considering personal jurisdiction over a non-resident defendant in similar circumstances. In these cases, Florida courts have generally held that the exercise of personal jurisdiction is highly dependent upon the facts of a given case, and have many times addressed the scenario in which a nonresident defendant is accused of breaching a contract with a Florida company, as is the case in the present appeal. *See* Fla. Stat. Ann. § 48.193 (a)(7) ("A person, whether or not a citizen or resident of this state . . . submits himself or herself . . . to the jurisdiction of the courts of this state for . . . [b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state.").

As an initial matter, it is well-settled in Florida that "[t]he due process requirement of minimum contacts is not satisfied by a showing that a party has entered into a contract with a non-resident, or a showing that payment must be made in Florida." *Bohlander v. Robert Dean & Assocs. Yacht Brokerage, Inc.*, 920 So.2d 1226, 1228 (Fla. Dist. Ct. App. 2006) (citing *Venetian*, 554 So.2d at 502; *Group One Enters., Inc. v. Publishers' Representative, Inc.*, 899 So.2d 402 (Fla. Dist. Ct. App. 2005); *Hartcourt Cos., Inc. v. Hogue*, 817 So.2d 1067 (Fla. Dist. Ct. App. 2002); *deMco Techs., Inc. v. C.S. Engineered Castings, Inc.*, 769 So.2d 1128 (Fla. Dist. Ct. App. 2000)). On the other hand, however, "when a non-resident defendant enter[s] into a contract with a Florida party for **substantial services** to be performed in Florida[,] . . . the defendant has purposely availed himself of the privilege of conducting activities in Florida." *Bohlander*, 920 So.2d at 1228 (citing *Smith Architectural Grp., Inc. v. Dehaan*, 867 So.2d 434 (Fla. Dist. Ct. App. 2004)) (emphasis added). Accordingly, Florida caselaw reflects that whether a party has sufficient minimum contacts with the state is highly dependent on the facts of the particular case, and in order to establish that Florida has personal jurisdiction over an out of state defendant the Florida plaintiff must show something beyond having merely entered into a contract with a nonresident defendant. *See Woodard Chevrolet, Inc. v. Taylor Corp.*, 949 So.2d 268, 270 (Fla. Dist. Ct. App. 2007) (holding that California defendant lacked sufficient minimum contacts with Florida where defendant contracted with a Florida company to design, produce, and print

- 16 -

advertising brochures for the California defendant and mail the brochures from Florida); ***Moro Aircraft Leasing***, 206 So.3d at 818 (concluding that minimum contacts was not satisfied where marketing agreement between Alaska corporation and Florida corporation never required substantial services to be performed in Florida, and in fact did not specify where the marketing services would take place); ***Fernandez***, 69 So.3d at 296–97 (determining that Florida lacked personal jurisdiction over Mexican company in breach of contract action where the Florida broker advertised defendant's airplane in national magazines, and the sale of the airplane closed in Canada).

Keeping in mind the foregoing, we cannot agree with the trial court that no issues of material fact remain outstanding in this case; on the contrary, the evidence presented by the parties leaves more questions unresolved than answered. While the nature of Hillcrest's contact with the State of Florida is an essential inquiry in determining whether the Florida court had personal jurisdiction over Hillcrest, the record is replete with disputes as to this question.

First, the original breach of contract suit against Hillcrest is based entirely on the contracts entered into by Beacon and Polaris. While Polaris asserts that Beacon was acting as an agent for Hillcrest when Beacon signed the contracts, Hillcrest has offered evidence that Beacon was, at all times, an independent contractor of Hillcrest and that Hillcrest never had knowledge of the contracts. The nature of the contracting party as an independent contractor is an important consideration in determining whether the facts show sufficient contacts to exert personal jurisdiction, as this goes to whether the defendant itself had sufficient minimum contacts with the forum state. *See **County of Cumberland v. Kwap***, 220 So.3d 1207 (Fla. Dist. Ct. App. 2017) (holding that the trial court erred in failing to consider the conflicting evidence on personal jurisdiction where New Jersey defendant submitted sworn affidavit that the tort at issue was committed by an independent contractor of the defendant, rather than the defendant itself). To the extent that Hillcrest's only connection with the State of Florida was indirect contact through its relationship with Beacon, this tends to undercut Polaris's assertion that Florida acquired personal jurisdiction over Hillcrest. If "[t]he due process requirement of minimum contacts is not satisfied by a showing that a party has entered into a contract with a non-resident[,]" ***Bohlander***, 920 So.2d at 1228, the record here is even less convincing where there is a dispute as to whether Hillcrest was even a party to the contract with a Florida entity at all. Indeed, the management contract between Beacon and Hillcrest is contained in the record, and reflects that Beacon was an independent contractor with its own authority to contract with third parties. Further, the affidavit of Beacon administrator Marcella Bryant supports Hillcrest's assertion that no officers or owners of Hillcrest ever knew about the contract with Polaris. As such, these facts, taken as true, tend to dispute Polaris's assertion of minimum contacts.

Second, it is entirely unclear from the record where the services provided for in the Polaris contracts were to be performed, despite the importance of this inquiry in a

minimum contacts analysis. *See Ganiko v. Ganiko*, 826 So.2d 391, 395 (Fla. Dist. Ct. App. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174 (1985)) ("Simply contracting with a nonresident is not enough to subject that nonresident to personal jurisdiction."); *QSR, Inc. v. Concord Food Festival, Inc.*, 766 So.2d 271, 275 (Fla. Dist. Ct. App. 2000) ("[I]t is . . . not enough to satisfy due process concerns that payment is to be made in the forum states . . . [r]ather, in assessing the sufficiency of the contacts, the courts have looked to the degree of control and interaction that the contract either contemplates or results in."); *Stomar, Inc. v. Seven Riverboat Co., LLC*, 821 So.2d 1183, 1187 (Fla. Dist. Ct. App. 2002) (concluding that nonresident defendant had sufficient minimum contacts with Florida where contract required "more than mere obligation to make payment in Florida."). Hillcrest's facility is located in Ashland City, Tennessee, while Polaris is located in Tampa, Florida. The contract, however, provides that Polaris's services would be rendered both "onsite and offsite as needed" without explanation as to whether "site" refers to Florida or Tennessee. Further, there is a provision in the contract requiring Beacon to reimburse Polaris for any travel its employees might do during the course of the contract. Again, there is no explanation in the record as to whether Beacon employees were traveling to Florida or Polaris employees were traveling to Tennessee. As such, we simply cannot discern whether "substantial services" were rendered in Florida, or if payment was merely meant to be tendered to a Florida company. *Bohlander*, 920 So.2d at 1228 (noting that payment to a resident company is insufficient to establish minimum contacts with the State of Florida). Details regarding the performance of the contract between Beacon and Polaris are necessary to determine whether Florida acquired personal jurisdiction over Hillcrest. Coupled with the other deficiencies noted in this Opinion, the absence of undisputed facts showing performance of the contract in Florida renders summary judgment in favor of Polaris inappropriate.

Next, Polaris urges on appeal that Hillcrest was subject to personal jurisdiction in Florida because the April 2015 contract provides that it "shall be governed by the laws of the State of Florida[,]" and that the trial court was correct in finding that "there is no issue of fact that the parties agreed to Florida jurisdiction." According to Polaris, the above language constitutes consent by Hillcrest to Florida's jurisdiction. For a number of reasons, we respectfully disagree.

First, although Florida law provides for certain circumstances under which parties can agree to personal jurisdiction within the state, the contract at issue does not fall within those enumerated circumstances. Section 685.101(1) of the Florida code provides that

> The parties to any contract, agreement, or undertaking, contingent or otherwise, in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or

intangible property, or both, of equivalent value, including a transaction otherwise covered by s. 671.105(1), may, to the extent permitted under the United States Constitution, agree that the law of this state will govern such contract, agreement, or undertaking, the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract, agreement, or undertaking bears any relation to this state.

Further, in relation to section 685.101, section 685.102 provides that

Notwithstanding any law that limits the right of a person to maintain an action or proceeding, any person may, to the extent permitted under the United States Constitution, maintain in this state an action or proceeding against any person or other entity residing or located outside this state, if the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of the law of this state, in whole or in part, has been made pursuant to s. 685.101 **and which contains a provision by which such person or other entity residing or located outside this state agrees to submit to the jurisdiction of the courts of this state.**

(emphasis added). Construing these two sections in tandem, it has been held that in order for a contract to confer personal jurisdiction on a Florida court, an agreement must satisfy the following: (1) a choice of law provision designating Florida law as the governing law, (2) a provision whereby the nonresident agrees to submit to the jurisdiction of the courts of Florida, (3) consideration of not less than $250,000, (4) inoffensive to the United States Constitution, and (5) either bears a substantial or reasonable relation to Florida or at least one of the parties is a resident of Florida or incorporated under its laws. ***Jetbroadband WV, LLC v. MasTec North Amer., Inc.***, 13 So.3d 159, 162–63 (Fla. Dist. Ct. App. 2009). Indeed, with the enactment of "section 685.102, the [Florida] Legislature, by its clear terms, granted parties . . . the right to confer personal jurisdiction by agreement." ***Id.*** at 163.

However, as the ***Jetbroadband*** court also makes clear, an agreement that confers personal jurisdiction over an out-of-state defendant requires both a choice of law provision as well as a provision in which "the non-resident agrees to submit to the jurisdiction of the courts of Florida." ***Id.*** Stated differently, the contract or agreement must contain both a choice of law provision *and* a forum selection clause. *See* 7 Williston on Contracts § 15:15 (4th ed.) ("A 'choice-of-forum clause' is one in which the parties agree on a presiding tribunal; a 'choice of law clause,' on the other hand, indicates which jurisdiction's law will govern the interpretation of a contract if litigation ensues").

In the present case, however, the April 2015 contract between Beacon and Polaris provides only that it "shall be governed by the laws of the State of Florida." There is

nothing in the contract that indicates that Hillcrest ever agreed to submit to the personal jurisdiction of the courts of Florida. While Polaris appears to assert that the relevant provision constitutes a forum selection clause pursuant to which Hillcrest consented to personal jurisdiction in a Florida court, this assertion conflates a forum selection clause with a choice of law clause and ignores the fact that there are additional jurisdictional requirements that must be satisfied.[7] Consequently, the provision that Polaris and the trial court rely on so heavily is not, in and of itself, sufficient to bring Hillcrest within the personal jurisdiction of the Florida court. *See Corp. Creations Enterprises LLC v. Brian R. Fons Attorney at Law P.C.*, 225 So.3d 296, 301 (Fla. Dist. Ct. App. 2017) (discussing this issue under section 685.101 and noting that the agreement at issue in that case satisfied all five jurisdictional requirements delineated in *Jetbroadband*).

Further complicating this issue is Polaris's failure to explain why the record on appeal contains two contracts between Beacon and Polaris. One contract was entered into in April of 2015, and the other was entered into in June of 2015. As stated *supra*, the April 2015 contract states that it will be controlled by the law of the State of Florida, while the June 2015 contract provides that it is controlled by the laws of Arkansas. While Polaris heavily relies on the choice of law clause in the first contract in arguing that Hillcrest consented to Florida jurisdiction, there is no explanation in the record as to why the April 2015 contract is controlling over the June 2015 contract. Likewise, there is no explanation as to why Polaris and Beacon would agree to be governed by the law of the State of Arkansas, or what effect this had on Florida's exercise of personal jurisdiction. Given the foregoing, the contracts themselves simply are not sufficient to subject Hillcrest to Florida's jurisdiction.

Beacon's reliance on the contracts themselves also presupposes that Hillcrest was a party to the contracts. As previously discussed, Beacon administrators, rather than officers of Hillcrest, signed both the April 2015 and the June 2015 contracts with Polaris. Hillcrest asserts that it had no knowledge of or involvement in the agreement with Polaris, and that only Beacon administrators knew about the contract with Polaris. As previously discussed, Florida courts have previously held disputes concerning whether a contract was entered into by an independent contractor rendered summary dismissal inappropriate. *See Kwap*, 220 So. 3d 1208 (holding that allegations that a contract was entered into by the defendant's independent contractor were sufficient to "refute the jurisdictional allegations in the complaint" such that a dispute of material fact was created). Accordingly, we cannot embrace the trial court's finding that "there is no issue of fact that the parties agreed to Florida jurisdiction."

---

[7] For example, section 685.101 also provides that it only applies to "obligation[s] arising out of a transaction involving in the aggregate not less than $250,000." The Florida judgment at issue is worth far less than the statutory requirement.

Under these particular circumstances, we simply cannot conclude that no genuine issues of material fact exist such that summary judgment in favor of Polaris is appropriate. Summary judgment proceedings have never been envisioned as substitutes for trials of disputed factual issues. *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 87 (Tenn. 2010) (citing *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997)). Summary judgment "should not replace a trial when disputed factual issues exist, because its purpose is not to weigh the evidence, to resolve factual disputes, or to draw inferences from the facts." *Downs v. Bush*, 263 S.W.3d 812, 815 (Tenn. 2008). Courts should grant summary judgment "only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Although Polaris contends that the facts surrounding the signing of the contract are not in dispute, the inferences to be drawn from those facts are sharply disputed. Weighing these inferences is simply not appropriate at the summary judgment stage. In light of the significant questions surrounding whether the Florida court ever acquired personal jurisdiction over Hillcrest, and Polaris's failure to address those questions, we conclude that the trial court erred in granting summary judgment to Polaris and effectively enrolling the Florida default judgment. Because we conclude that the trial court's order granting summary judgment should be vacated and remanded based upon the issues surrounding the jurisdiction of the Florida court, the issue of whether service of process on Hillcrest was adequate is hereby pretermitted.

## Conclusion

The order of the Davidson County Chancery Court granting summary judgment in favor of Cannon and Associates, LLC d/b/a/ Polaris Group is hereby vacated and remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed against Cannon and Associates, LLC d/b/a/ Polaris Group, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE